IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA R. KAPLAN,<br><br>                    Plaintiff,<br>v.<br><br>DAVIDSON & GRANNUM, LLP,<br>SANDRA D. GRANNUM & DAVID L.<br>BECKER<br><br>                    Defendant. | Case No. 07C 6668<br><br>JUDGE MAROVICH<br><br>MAGISTRATE JUDGE SCHENKIER |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This legal malpractice action arises from defendants Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker's (collectively "D&G") representation of Plaintiff Barbara R. Kaplan ("Kaplan"). This representation took place almost entirely in the State of New York, by New York lawyers, before New York Courts and New York arbitration panels, against New York lawyers, applying New York law and involving New York subject-matter and witnesses that lived or worked in the New York area. There can be no question that New York has an interest in a legal malpractice claim involving its lawyers. Illinois, on the other hand, has no interest in this dispute. Accordingly, this case should be litigated in New York, not Illinois.

In addition to the present action, there is already a separately-filed suit involving the same parties, *Davidson & Grannum, LLP v. Barbara Kaplan*, Supreme Court of the State of New York, County of New York, Part 10 Case Number 601276/06. See Exhibit 1, Docket of Case No. 601276/06. In that matter, filed in April, 2006, D&G seeks to recover attorney fees owed to them by Kaplan for the aforementioned legal services performed in New York. See Exhibit 2, *Amended Complaint* in Case No. 601276/06 ("New York matter").

Although Kaplan apparently believes she has a valid legal malpractice claim against D&G, she chose not to file a counterclaim in the New York matter, and instead filed her malpractice claim against D&G in a separate case in a separate jurisdiction more than 20 months after the New York matter was initiated. Kaplan filed this separate action despite the obvious connection between her claims and D&G's claims in that they arise from a common nucleus of

454182.1

facts. See and Compare Exhibit 3, *Complaint At Law* in present matter to Exhibit 2, *Amended Complaint* in New York matter.[1]

Because the doctrine of *forum non*-conveniens, the First to File rule, and substantive Illinois law barring the litigation of parallel actions involving the same parties applies to the litigation of this matter in this Court, and because justice is best served by the litigation of <u>one</u> set of facts in <u>one</u> jurisdiction rather than the litigation of two cases in two jurisdictions, this Court should issue an ORDER dismissing Kaplan's Complaint without prejudice and instructing her to seek leave from the New York court to file her action against D&G in that forum.

## II.   BACKGROUND FACTS

The seeds from which this matter arises were planted many years ago when an investigation arose regarding Plaintiff's improper trading practices on the New York Stock Exchange ("NYSE").

Plaintiff Barbara Kaplan was employed for more than 35 years for several major Wall Street brokerage firms who were members of the NYSE, including Drexel Burnham, Bear Stearns, UBS, CIBC Oppenheimer ("CIBC") and Morgan Stanley. See Exhibit 3, *Complaint* ¶ 1.

Plaintiff herself alleges that while she was employed by CIBC, CIBC investigated and reported her to the NYSE Regulatory Division based upon allegations that Kaplan improperly facilitated many transactions that benefited accounts owned by her brother, Myron Kaplan, to the detriment of accounts owned by a hedge fund in which Mr. Kaplan was a general partner ("partnership"). See *Complaint* ¶ 5, 11-12; see also Exhibit 5, *Judgment Entry and Opinion* in Supreme Court State of New York, County of New York, Part 49 Case No. 603029/04 ("212 Case").

Plaintiff alleges Becker filed documents with the NYSE that led the NYSE to launch an investigation into the subject matter of the CIBC investigation. See *Complaint* ¶ 10-12. The NYSE investigated whether Kaplan, at her brother's direction, entered trades without account numbers, and then allocated those trades after their execution in a way that Myron Kaplan's accounts received better execution prices than the partnership. Further, the NYSE investigated

---

[1] Both Plaintiff's Complaint and D&G's Complaint allege Kaplan retained D&G to defend her on the 212 case on January 11, 2005. See Exhibit 3 at ¶ 15, Exhibit 2 at ¶ 4. Both Complaints allege Kaplan retained D&G to represent her in a second matter before the American Arbitration Association. See Exhibit 3 at ¶ 32, Exhibit 2 at ¶ 5. Both Complaints allege Kaplan terminated D&G's representation of her in February, 2006. See Exhibit 3 ¶ 8, Exhibit 2 at ¶ 46. see also Exhibit 4, Amended Answer in New York matter, Fifth Affirmative Defense and compare with Exhibit 3 at ¶ 4-14.

2

whether Kaplan had reallocated certain securities to the partnership from Myron Kaplan's account after Myron Kaplan determined them to be "loser" trades. See Exhibit 5.

On June 12, 2003, the NYSE determined that Kaplan had effected improper post-execution allocation on approximately 373 occasions between November, 1998 and April, 1999. The NYSE censured Kaplan, suspended her from the securities industry for one year and fined her $100,000. See Exhibit 5.

The partnership then filed an action in New York against Myron Kaplan and the Plaintiff in an action entitled *212 Investment et al. v. Myron Kaplan, Barbara Kaplan*, et al. See *Complaint* ¶ 12, see also Exhibit 4. Defendants were one of several law firms that represented Kaplan in that litigation. See Exhibit 6, ¶ 22, Affidavit of Sandra Grannum.

Plaintiff alleges D&G breached the standard of care in defending her in the 212 case. She alleges Becker prepared a long and unnecessarily detailed answer to the Complaint and alleges D&G revealed privileged information to Plaintiff's attorneys, resulting in Plaintiff calling three witnesses to Kaplan's detriment. See *Complaint* ¶ 21, 24.[2]

On February 25, 2006 before the arbitration case was completed, Kaplan terminated D&G's representation of her. See *Complaint* ¶ 46. On January 29, 2007, an arbitration panel hearing the 212 Case issued an opinion finding against both Kaplan and Myron Kaplan. See Exhibit 7. The Kaplans appealed to the trial court and, ultimately, on July 18, 2007, the New York court hearing the 212 case found the defendants, including Kaplan, liable for improper trading benefits and fraud. See Exhibit 5.

The Court ordered the defendants to pay the following amounts:

$16,336,288 for the wrongful allocation of trades;
$35,041,131 for the return of Myron Kaplan's performance fees;
$4,199,503.00 for return of Barbara Kaplan's commission fees;
$16,336,288.00 in punitive damages;
$3,055,000 in attorney fees and disbursements;
$1,572,700 to a respondent in arbitration for attorney fees and costs;
$220,169 for arbitration costs.

See Exhibit 5.

---

[2] It should be noted that the arbitration panel hearing Kaplan's case specifically found that while Kaplan disavowed the Answer filed by D&G, she did not file an Amended Answer for months. Additionally, the arbitration panel found her disavowal as non-credible, given the introduction of evidence showing Kaplan reviewed the Answer with D&G. See Exhibit 7, Award of Arbitrators.

In April, 2006, D&G filed suit against Kaplan in New York, seeking payment of $50,661.71 in accrued legal fees. See Exhibits 1 and 2.

In September, 2006 Kaplan filed a *Motion to Dismiss* the allegations stated against her by D&G in D&G's fee action. See Exhibit 8. The Court denied Kaplan's motion on March 23, 2007. See Exhibit 9. Kaplan filed an Amended Answer on October 15, 2007. See Exhibit 4. Plaintiff did not state a counter-claim against D&G for the damages allegedly arising from D&G's representation of her in the 212 Case. See Exhibit 4.

Plaintiff initiated this action in the Cook County Circuit Court on November 1, 2007. See *Complaint*.[3] D&G removed the case to this Court based upon diversity grounds on November 28, 2007. See Exhibit 9. D&G now moves the Court to dismiss Plaintiff's *Complaint*, so that it can be filed in New York, where the fee action is pending and where this case is best resolved.

### III. LAW AND ARGUMENT

#### A. *Forum Non Conveniens*

Courts of equity and of law occasionally decline, in the interests of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the

---

[3] As noted above, Plaintiff also retained D&G to represent her in two other actions. Plaintiff retained D&G to defend her in an arbitration claim brought by a former client, Gregory Grimes, in New York. Mr. Grimes alleged Kaplan was liable to him under theories of negligence, unauthorized trading and breach of fiduciary duty and Kaplan filed a counter-claim. See Exhibit 10, Award NASD Dispute Resolution. Ultimately, the arbitration panel deciding the *Grimes* matter dismissed both the claim and the counter-claim but Plaintiff alleges D&G overcharged her for their representation of the Grimes matter and their failure to recoup her attorney fees and costs. See *Complaint* ¶ 37-40, see also Exhibit 10.

Plaintiff also retained D&G to represent her in a discrimination action filed in Illinois against Kaplan's former employer, Wunderlich Securities. See *Complaint* ¶ 53. Prior to D&G's involvement, Kaplan had filed a *pro se* EEOC claim against Wunderlich alleging discrimination based upon her age, gender, religious beliefs and disabilities. The EEOC dismissed the case in October, 2005 without prejudice to Kaplan's ability to bring suit in a civil court. See Exhibit 11, Charge of Discrimination, Dismissal and Notice of Rights; see also Exhibit 6.

In January, 2006, Kaplan asked D&G to prosecute the matter on her behalf. Because D&G was not admitted in Illinois, D&G worked with Kaplan's attorney in the present matter, who filed the action in Chicago in January, 2006. See Exhibit 6. D&G was terminated by the Plaintiff the following month. Accordingly, they did nothing to help prosecute this case on behalf of Kaplan. Ex. 6 ¶ 15-19. The lawsuit was dismissed and Plaintiff alleges D&G is liable to her because they filed a frivolous lawsuit on her behalf, subjecting her to a payment of attorney fees. See *Complaint*, ¶ 53.

Given the substantial amount of damages alleged by the Plaintiff based upon the millions of dollars Kaplan was found liable for in the 212 Case, it is clear that the vast majority of Plaintiff's *Complaint* against D&G arises from the 212 Case.

4

454182.1

litigation can be more appropriately conducted in a foreign tribunal. *Canada Malting Co. Ltd. v. Paterson Steamships, Ltd.*, 285 U.S. 413, 422-423, 52 S. Ct. 413 (1952).

This principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction, even when jurisdiction is authorized by the letter of a general venue statute. General venue statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839 (1947).

However, the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to herself. *Gilbert*, supra.

A federal district court has the power to dismiss an action at law pursuant to the doctrine of *forum non conveniens* – at least where its jurisdiction is based on diversity of citizenship and the state courts have such power. *Id.* (syllabus).

The present matter is one where the principle of *forum non conveniens* is applicable. It is clear that Plaintiff should have filed her *Complaint* against D&G in New York as a counterclaim to D&G's action against her, or separately based upon the applicable New York State venue statutes. Plaintiff chose not to do so, perhaps in the interests of seeking to cause D&G the most inconvenience in defending itself against Plaintiff's allegations. This Court has the power to dismiss this action and cause Plaintiff to litigate it in the appropriate forum, and D&G believes this Court should exercise such powers.

### 1. *Forum Non Conveniens* analysis generally

A *forum non conveniens* analysis takes place in two steps. First, the court must determine whether an adequate alternative forum is available; second, it must weigh several private and public interest factors related to the proper location for the litigation. *Hyatt Int'l Corp. v. Coco*, 302 F. 3d 707, 718 (7th Cir. 2002).

Important considerations for a Court's review are those pertaining to the private interests of the litigants. Such interests include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of a jury view of premises; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil Co. v. Gilbert* at 508

Factors of public interest also have a place in applying the doctrine. It has been stated that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. Further, in cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.

There is a localized interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Gulf Oil Co.* at 508-509.

In the present matter, there is no question that another forum exists for Plaintiff's prosecution of her claims against D&G, indeed, an action between the parties is already underway in New York, and Plaintiff has retained counsel on her behalf in that matter. See Exhibits 1, 2, 4, 8 and 9.

A forum is available if "all parties are amenable to process and are within the forum's jurisdiction." *In re Bridgestone/Firestone*, 420 F. 3d 702, 704 (7th Cir. 2005). A forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *Id.*

By virtue of the ongoing action between the parties in New York, each is within the jurisdiction of the New York court. Further, the remedies in a New York court are equivalent to the remedies available in this Court.

As such, the only issue for this Court to decide in conducting a *forum non-conveniens* analysis is whether the substantial private and public interest in having this matter litigated in New York rather than Illinois outweighs Plaintiff's choice in bringing this matter in Illinois.

### 2. Analyzing the private interests of the litigants

As discussed above, the underlying litigation that gives rise to Plaintiff's suit was a civil action against Kaplan, which was filed and litigated in New York, based upon events that occurred in New York and in which the defendants conducted their defense of Kaplan in New York.

As such, one would expect the witnesses relevant to that litigation to be most accessible in the greater New York-area. That is, indeed, the case.

Defendants Becker and Grannum live in New York and both work in the New York metropolitan area. See Exhibit 6 ¶ 9, 26; Exhibit 12 ¶ 9, 14, Affidavit of David Becker. All other

6

454182.1

D&G attorneys who performed legal services on behalf of Kaplan live or work in the New York Metropolitan area. See Exhibit 6 ¶ 9, 25; Exhibit 12 ¶ 10, 27.

The adversary law-firm in the 212 case, Quinn Emanuel Urquhart Oliver & Hedges LLP ("Quinn") is located in New York. See Exhibit 6 ¶ 6; Exhibit 12 ¶ 8. The arbitration panel which considered the allegations of the 212 matter and reached a decision that was adopted by the New York court is in New York area. See Exhibit 7.

The witnesses who Plaintiff alleges D&G improperly identified to Quinn are presumably in the New York area as they were noted to be a CIBC order room operator, a CIBC wire room operator, the Bear Stearns order room supervisor and two of Kaplan's former sales assistants at Bear Stearns. See Exhibit 6 ¶ 11-13. Unless these witnesses are now located in Illinois, the Court simply does not have jurisdiction over these witnesses and would need to rely on the witnesses' cooperation in order to gain their testimony at deposition and to have them appear before it for trial. Moreover, the cost of bringing willing witnesses and representatives of the parties from New York to Chicago for purposes of both deposition and trial testimony would be significant.

As was noted by the *Gulf Oil Co. v. Gilbert* Court, "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Id.* at 511.

Additionally, at least in regards to the Plaintiff, Becker and Grannum, there can be no dispute that it will be far easier and preferable for each to testify ONCE in regards to their actions as it affects the fee dispute and malpractice claims, than to testify TWICE, in two forums, in regards to each of these issues.

Simply put, the only person involved in this litigation for who Chicago is more convenient is the Plaintiff and she has consented to jurisdiction of the New York court for both the fee action and the underlying matter which gave rise to the fee action.

In regards to access to the material evidence, all files relating to legal work performed by D&G on Kaplan's behalf were maintained and are still located in New York. See Exhibit 6 ¶ 24, Exhibit 12 ¶ 13.

Additionally, in proving their allegations of legal malpractice, Plaintiff will need to prove their "case within a case." Because the underlying case was contested in the New York Courts and arose under New York State law, a New York Court would be in a better position to

7

454182.1

understand the nuances of that claim, and how the actions or inactions of D&G proximately caused Plaintiff loss (or did not do so).

In short, there are no private interests that favor litigation of this matter before this Court because the underlying matter was contested in New York, involved the application of New York law and involved the testimony of witnesses local to New York.

### 3. Analyzing the Relevant Public Interests

Many of the public interests identified in *Gulf Oil. Co.* are present in this matter, and each of these public interests dictates that the proper forum for this litigation is New York.

First, the underlying lawsuit that gave rise to D&G's representation of Kaplan was a claim that Kaplan and her brother improperly diverted funds from a group of investors to Myron Kaplan.

A New York state court ordered Kaplan to pay both compensatory and punitive damages in excess of $20 million dollars as a result of her liability in that matter. See Exhibit 4. Clearly New York, not Illinois, has a substantial interest in any litigation that affects Plaintiff's ability to pay the judgment rendered against her.

Second, the dispute is a localized matter, local to New York. The legal work performed on Kaplan's behalf occurred in New York; the hearings regarding her alleged liability to the partnership occurred in New York; and the judgment against her was rendered in New York. See Exhibit 5.

A jury in this jurisdiction, and this Court should not be required to listen to testimony, consider and ultimately decide an action which asks the question: Did a New York attorney appropriately litigate the claims stated against the Plaintiff in a New York court, based upon allegations that she improperly conducted business transactions on the NYSE that affected non-Illinois residents?

In the *Old World Trading Company v. Americhem Corporation*, 1992 U.S. Dist. LEXIS 2923 (N.D. Ill.), the defendant sought to transfer venue from Illinois to Michigan in a case involving hazardous chemicals. In granting the Motion, Judge James F. Halderman noted:

> One of Americhem's affirmative defenses increases the public interest in having the case resolved in a Michigan forum. Americhem alleges that Old World violated certain laws of Michigan in that one of the orders of chemicals for which Old World seeks recovery in this action was so defective that it "constituted the shipment and disposal of hazardous waste"... **This shipment came from Massachusetts and was received by Americhem at its plant in Mason,**

> **Michigan. These chemicals were often distributed to companies in Michigan and disposed of by a Michigan trucking company. The chemicals were never present in Illinois. Than an issue exists whether the chemicals amounted to hazardous waste and were properly handled and disposed of in Michigan. These questions tip the scale in favor of finding the public interest would be best served by allowing a Michigan court to hear this action.** *Id.* at 7.

Likewise, in the current matter, the events giving rise to suit occurred elsewhere than in Illinois. The allegations giving rise to the underlying suit against Kaplan did not occur in Illinois, nor did any alleged action or omission undertaken in her defense by D&G. Illinois has no interest in the outcome of this matter.

Additionally, Count Six of Plaintiff's Complaint alleges a breach of New York State Judiciary Law Section 487. See *Complaint* ¶ 98-103. While this Court certainly would be able to read and interpret New York State Judiciary Law Section 487, it is a foreign statute to this Court, and would be more justly interpreted by a New York State Court with knowledge of the New York legislative scheme generally, and the relevant statute particularly.

Proper application of New York State Judiciary Law Section 487 is particularly important to the parties because Plaintiff alleges entitlement to punitive damages under the statute. See *Complaint* ¶ 98-103. As such, it is vitally important that a Court familiar with New York State law consider any claims related to an alleged violation of Judiciary Law Section 487. See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252 (1981); *Stepan Co. v. Callahan Chem. Co.*, 2007 U.S. Dist. LEXIS 74261 (N. D. Ill. 2007), *St. Paul Surplus Lines Ins. Co. v. Cox Operating, LLC*, 2007 U.S. Dist. LEXIS 89810 (S.D. Tex. 2007).

### 4. Deference to Plaintiff's Choice of Forum

It has been stated that there is a strong presumption in favor of the plaintiff's choice of forum. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F. 2d 1239, 1245 (7th Cir. 1990). However, the presumption is not nearly so great in this matter as to negate the private and public interests enumerated above.

The great deference once accorded the plaintiffs' choice of forum when considering *forum non conveniens* motions has diminished since Section 1404(a) of the Federal Rules of Civil Procedure was enacted. *Howard v. Viking Ranches Inc.*, 1987 U.S. Dist. LEXIS 8289, 5-6 (N.D. Ill.1987) citing *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp. 1048, 1058 (N.D. Ill. 1982).

454182.1

For example, in *Howard* the Plaintiffs were Illinois citizens, but the defendants were non-Illinois residents, and the horse-breeding giving rise to suit occurred in California. The defendants filed a Motion to Dismiss based upon *forum non conveniens* or, in the alternative, transfer to the Southern District of California. *Id.*

The District Court transferred the case to the Southern District of California, finding that because the Illinois contacts were quite limited, and thus, the plaintiff's choice of forum was of little effect:

> In conclusion, plaintiffs' choice of forum has been outweighed by compelling reasons for transfer. The contract was performed in the Southern District of California, the horses are located in that forum, proof is more accessible in that forum, California law will be applied, and the convenience of the majority of potential witnesses is better served in that forum. This being so, the interests of justice and the convenience of the witnesses dictate the transfer of this action to the Southern District of California. *Id.* at 11.

A similar analysis should be applied to this matter. The legal services in question were performed in New York; the judgment against Kaplan is located in New York; the likely source of any alleged proof of Kaplan's legal malpractice allegations are located in New York, and the convenience of the majority of witnesses is better served in New York. Plaintiff's choice of forum does not outweigh all these factors, and this matter should be dismissed for further litigation in the New York courts.

### B.   The First to File Rule

In *Martin v. Graybar Electric Co.* 266 F. 2d 202 (7th Cir. 1959), this District confronted the issue of a party defendant in an Illinois action filing an action in Iowa four days after being served with the Complaint in the Illinois case. The Plaintiff in the original case moved the Court to issue an injunction barring litigation of the second-filed action.

In announcing the "first to file" rule, the *Martin* Court stated:

> Two simultaneously pending lawsuits involving identical issues and between the same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but conducive to the orderly administration of justice. **We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings in issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining the prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice**

**unless unusual circumstances warrant.** As none such appears in this record, we agree with what would seem to be the established general rule that the party filing later in time should be enjoined from further prosecution of his suit, *Id.* at 204.

As noted above, D&G filed a fee action against Kaplan in April, 2006. Plaintiff waited until November, 2007 to initiate this action. There are no unusual circumstances here that would warrant this Court's determination that Plaintiff should be able to subject D&G to concurrent litigation over the same subject matter: D&G's legal representation of the Plaintiff. As such, the rule of *Martin* applies, and Plaintiff's action against D&G should not be allowed to continue.

Plaintiff may argue that an action for recovery of fees and an action alleging legal malpractice are not lawsuits involving identical issues. However, under Illinois law, there is a nexus between a plaintiff's defense to a fee action and a malpractice action brought by the same defendant. *Bennett v. Gordon*, 282 Ill. App. 3d 378, 668 N.E. 2d 109 (1st Dist. 1996). As a result, where the defendant to the fee action raises the same defenses in both a fee action and a legal malpractice action, an adverse ruling in the fee action is considered *res judicata* on the claims stated in the legal malpractice action:

> While Plaintiff's malpractice claims are more fully developed, both sets of allegations arise from the same core of facts.... The resolution of Plaintiff's cause of action involves an examination of the same facts and issues raised in defense to the fee petition. Recovery under these facts constitute but a single cause of action. *Bennett* at 383-384

Thus, because the issues in the New York matter and the present matter arise from the same core of facts, they must be considered a single cause of action under Illinois law. Application of the first to file rule is appropriate under such circumstances.

Additionally, in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976), the United States Supreme Court held that a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote "wise judicial administration."

In deciding whether *Colorado River* abstention applies, a court must first consider whether two lawsuits are parallel, which means that "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." If that is the case, a Court must consider 10 factors in deciding whether to abstain from jurisdiction. *Id.* at 818.

The 10 factors a Court must consider under *Colorado River* are:

(1) Whether the state has assumed jurisdiction over property;

454182.1

(2) The inconvenience of the federal forum;
(3) The desirability of avoiding piecemeal litigation;
(4) The order in which jurisdiction was obtained in the concurrent forums;
(5) The source of governing law, state or federal;
(6) The adequacy of state-court action to protect the federal plaintiff's rights;
(7) The relative progress of state and federal proceedings;
(8) The presence or absence of concurrent jurisdiction;
(9) The availability of removal; and
(10) The vexatious or contrived nature of the federal claim.

*Id.*

In the present matter, Plaintiff's Complaint is for personal property only, and, as such, the first *Colorado River* factor is irrelevant.

However, nearly all of the other factors dictate that this Court dismiss Plaintiff's claim so that it may be litigated in the New York Courts. There is no question that the D&G fee Complaint was filed prior to the present matter; no question that Plaintiff's claims derive from state law; no question that Plaintiff can receive any adequate remedy in the New York courts, and no question that, while this matter is just beginning, the New York matter has made progress towards completion.

Further, the public policy favoring judicial economy and disfavoring piecemeal litigation necessarily favors dismissal of the present matter in favor of a single lawsuit regarding D&G's representation of Kaplan.

Thus, dismissal of this matter is warranted under a "first to file" analysis.

### C.    Illinois substantive law's (735 ILCS 5/2-619) application to matter

735 ILCS 5/2-619 provides in relevant part:

(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds...
 ... (3) That there is another action pending between the same parties for the same cause.

735 ILCS 5/2-619(a)(3) is a substantive provision that federal courts in this jurisdiction must apply to cases removed from the Illinois courts. *Praxair, Inc. v. Slifka*, 61 F. Supp. 2d 753, 763 (N.D. Ill. 1999). see also *Brach & Brock Confections, Inc. v. Redmond*, 988 F. Supp. 1106 (N.D. Ill. 1997); *Northbrook Prop. & Cas. Ins. Co. v. Allendale Mut. Ins. Co.*, 887 F. Supp. 173 (N.D. Ill. 1995); *International Ins. Co. v. Certain Underwriters at Lloyd's London*, 1992 U.S. Dist. LEXIS 6164 (N.D. Ill. 1992); *Ball v. Deere & Co.*, 684 F. Supp. 1455 (C.D. Ill. 1988).

The Illinois Supreme Court stated in *A.E. Staley Manufacturing Company v. Swift & Company*, 84 Ill. 2d 245, 419 N.E. 2d 23 (1980) that the purpose of Section 48 (1)(c) of the Civil Practice Act (the predecessor statute to 735 ILCS 5/2-619) is to avoid duplicative litigation and the trial court's analysis should be geared towards effectuating that purpose. Absent special circumstances, dismissal remains the Section 2-619(a)(3) norm. *Brach & Brock Confections v. Redmond*, 988 F. Supp. 1106, 1108 (N.D. Ill. 1997). While the statute allows a court discretion to determine whether a second action should be dismissed, an important factor in making such a determination is whether the litigation has a legitimate and substantial relation to Illinois. *Id.* at 253. As discussed above, no such legitimate and substantial relation with Illinois exists in the present matter.

Additionally, in most cases, a Section 2-619(a)(3) analysis comes down to a simple weighing of the prejudice to the non-movant if the motion is granted against the policy of avoiding duplicative litigation. Moreover, the dismissal provisions of §2-619(a)(3) should be construed liberally. *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 276 (7th Cir. 2003).

There can be no prejudice to the Plaintiff if this Court finds that §2-619(a)(3) is substantive law and requires dismissal of the present matter. Plaintiff can pursue her claims against D&G in the New York matter by filing a counterclaim.

Thus, in keeping with the public policy of Illinois expressed in §2-619(a)(3) for avoiding duplicative lawsuits between parties, this Court should dismiss Plaintiff's claim against D&G.

## IV.   CONCLUSION

Plaintiff Barbara R. Kaplan's *Complaint* against Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker's alleges several causes of action arising from the defendants' legal representation of her. Because the defendants have filed a separate action against Kaplan, and because the New York State is the better forum for litigation of this matter, Defendants Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker move this Court for an ORDER dismissing Plaintiff's *Complaint*, so that her claims may be litigated against the defendants in New York.

454182.1

Respectfully submitted,

**DAVIDSON & GRANNUM, LLP;**
**SANDRA D. GRANNUM AND**
**DAVID L. BECKER**


By: _/s/ Daniel E. Tranen_
　　　One of their attorneys

Daniel E. Tranen (#6244878)
WILSON, ELSER, MOSKOWITZ,
　EDELMAN & DICKER LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
Telephone:　(312) 704-0550
Facsimile:　(312) 704-1522
Daniel.Tranen@wilsonelser.com

454182.1

## CERTIFICATE OF SERVICE

    The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing pleading was served on:

*__Attorney for Plaintiff__*
Gregg M. Rzepczynski
Gregg M. Rzepczynski & Associates Ltd.
175 West Jackson Boulevard, Suite 1650
Chicago, Illinois 60604

by: ☐ hand-delivery; ☐ facsimile; ☐ overnight mail, next day delivery; and/or ☑ depositing same in the US Mail at or before the hour of 5:00 p.m. this 21st day of December, 2007.

                                                                                 */s/ Daniel E. Tranen*
                                                                                 Daniel E. Tranen

454182.1