# EXHIBIT 7

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

---

Re: 13 180 Y 00862 05

212 Investment Corporation, Alice Dodge Wallace, Bagan 1992 Family Trust, Bernard Greenberg Family Trust, Burton S. Benovitz, M.D., Carolyn G. Nelson CLB Trust, Cynthia S. Raskin, Dodge Associates, Doriss Lakin Zafrani Irrevocable Trust 1991, Doris Lakin Zafrani Irrevocable Trust 1987, Drake limited partnership, Grant Bagan, Harvey S. Klein, Hand G. Nelson Foundation, Homer L. Dodge, Jemp D. Foundation, Joyce Bagan, Judith & Harvey Klein Family limited partnership, Julius P Fouts Pension Plan, Margo Lakin 1987 Irrevocable Trust, Margo J. Lakin 1991 Investment Trust, Milida Investors, Nathan Shapell Trust, Robert H. Schock, Robert D. Stein, Seymour Bagan, Shapell Industries, Inc., Vera S. Guerin Trust, derivatively on behalf of Kaplan, Nathan & Co.,                    **Claimants**
and
Myron Kaplan and
Kaplan, Nathan & Co. LLC and
Barbara Kaplan,                                        **Respondents**
and
Kaplan, Nathan & Co.                                   **Nominal Respondent**
and
James Nathan,                                          **Respondent.**

---

## AWARD OF ARBITRATORS

THE UNDERSIGNED ARBITRATORS, having been duly designated pursuant to the Amended and Restated Limited Partnership Agreement dated as of January 1, 1987 (the "Agreement"), and having duly executed their oaths, and having duly considered the Claimants' amended claim and the Respondents' defenses, the proofs and arguments of the parties do Award as follows:

EXHIBIT 7

Re: 13 180 Y 00862 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

We Find that Respondents Myron Kaplan and Barbara Kaplan knowingly and willfully defrauded the Claimant Limited Partners ("Claimants") and grossly breached their fiduciary duties to Claimants. Our conclusions are based principally upon our evaluations of the credibility of the witnesses and our analysis of extensive documentary evidence submitted by the parties.

We conclude that at least since 1991, Respondents Myron Kaplan and Barbara Kaplan intentionally and wrongfully engaged in post-execution allocation of securities trades such that Myron Kaplan's personal accounts systematically received preferential treatment over so much of the accounts of Kaplan, Nathan & Co. (the "Partnership") as were directed by Myron Kaplan and brokered by his sister, Barbara Kaplan. Our conclusions are based upon our evaluations of the credibility of witnesses and documentary evidence regarding many areas of proof, including but not limited to the following:

1. Following a three (3) year investigation, the New York Stock Exchange and Barbara Kaplan entered into a Stipulation of Findings dated June 10, 2003 in which Barbara Kaplan stipulated and agreed under oath that she wrongfully placed orders at CIBC Oppenheimer ("CIBC") without identifying the name of the customer or the account number and then, at a later time, improperly allocated these trades such that more favorable execution prices were allocated to the accounts of her brother Myron Kaplan rather than to the accounts of the Partnership.

Re: 13 180 Y 00862 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

2. In Barbara Kaplan's own sworn testimony before the New York Stock Exchange, she admitted under oath that she made these improper post-execution allocation of trades to favor the accounts of her brother Myron Kaplan. She further testified that she herself had no discretion over the allocation of trades to the accounts but she testified that, "The better price had to go to Myron Kaplan". Barbara Kaplan's later disavowals of all these sworn admissions based upon allegations of illness, lack of appropriate advice and/or counsel, or a desire to put the "matter behind" her are simply not credible.

3. CIBC's internal investigation and conclusions and CIBC's Form U-5 to the New York Stock Exchange all confirmed that Barbara Kaplan wrongfully allocated trades such that more favorable prices went to the account of her brother, Myron Kaplan, rather than to the Partnership account.

4. Myron Kaplan's own handwritten note that he was "greatly disturbed by the impropriety of Barbara's conduct" and Myron Kaplan's own testimony at the early sessions of the arbitration hearings further confirmed the post-execution allocation improprieties. Myron Kaplan's later disavowal of these admissions and his later claims that Barbara Kaplan "did nothing wrong" and that he advised Barbara Kaplan not to stipulate to the New York Stock Exchange findings were directly refuted by Barbara Kaplan herself and were not credible.

5. The sworn testimony of witnesses who worked with Barbara Kaplan both at Bear Stearns and CIBC including a CIBC order room operator, a CIBC

Re: 13 180 Y 00882 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

wire room operator, the Bear Stearns order room Supervisor, and two of Barbara Kaplan's own former sales assistants at Bear Stearns established the regular practice of Barbara Kaplan, at the direction of Myron Kaplan, of wrongfully placing orders without account or customer designations and then later allocating these trades giving favorable prices to the personal accounts of Myron Kaplan over the Partnership accounts. Significantly, many of these witnesses testified against their own interests and some testified to direct involvement by Myron Kaplan.

6. The Stipulation by Claimants and Respondents of an 84% preference rate where Myron Kaplan's personal accounts received better prices than the Partnership accounts for tens of thousands of same day, same security trades both at Bear Stearns and CIBC. If the analysis eliminates 7% of the transactions where Myron Kaplan's personal accounts and the Partnership accounts had the same prices on the same day same security trades, the preference rate for Myron Kaplan's accounts was 92% of such transactions. The continuously changing explanations of Myron Kaplan and Barbara Kaplan regarding different trading strategies, morning trades, average pricing, and ineptitude and/or cover-ups by CIBC and Bear Stearns were not credible.

7. In Barbara Kaplan's original answer in this arbitration, she admitted that:

Re: 13 180 Y 00862 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

"In determining the account that would receive the benefit of any specific order, Barbara Kaplan followed the instructions of the account holder. In particular, when handling trades for the Partnership's accounts, Barbara Kaplan followed the directives of Myron Kaplan..."

For months after Barbara Kaplan disavowed this pleading, no amended answer was interposed. Moreover, Barbara Kaplan's disavowal was not credible, especially in light of the time sheets, which established that she reviewed the answer with her prior counsel.

8. Extensive testimony regarding specific trades on specific days in the same securities further establishing the wrongful post-execution allocations.

9. The testimony of Barbara Kaplan's own former counsel that Barbara Kaplan engaged in wrongful post-execution allocation of trades based upon standing instructions from Myron Kaplan to favor his personal accounts over the Partnership accounts.

We also Find that Respondents Myron Kaplan and Barbara Kaplan knowingly and willfully attempted to cover up their wrongdoing by engaging in significant obstructive tactics including but not limited to the following:

1. Myron Kaplan wrongfully refused to produce records of his personal trades for the entire Bear Stearns period.

2. Myron Kaplan wrongfully refused to produce his own analysis of his personal gain in his personal accounts as a result of the wrongful post-execution allocations, even though he had promised to do so and, based upon the credible

Re: 13 180 Y 00862 05
212 Investment Corporation et al.         Claimants
and
Myron Kaplan and
Kaplan, Nathan & Co. LLC and
Barbara Kaplan,                            Respondents
and
Kaplan, Nathan & Co.                       Nominal Respondent
and
James Nathan,                              Respondent

evidence, he did perform such an analysis. Myron Kaplan's testimony that such analysis consisted only of adding machine tapes, was refuted by the testimony of his own accounting assistant and was not credible.

3. Myron Kaplan wrongfully did not provide adequate information or explanation regarding the significant diminution by him of both his own interests in the Partnership (beyond the limitations permitted by the Agreement) and of his personal sales and interests in Toll Brothers and Lennar stock.

4. Myron Kaplan wrongfully obstructed the independent investigation of counsel retained by Jeff Nathan, his co-managing partner, to investigate the extent of wrongdoing. He refused to provide such counsel with documents properly requested and he wrongfully stopped payment to such counsel for services rendered.

5. Myron Kaplan did not truthfully report to Claimants or to the Partnership's accountants regarding the nature and extent of the wrongdoing committed by Barbara Kaplan and himself but instead claimed that Barbara Kaplan's wrongs were not material.

6. Barbara Kaplan testified that she was unaware of the negotiations between her former counsel and Claimants' counsel and the representations of her former counsel regarding a proffer of testimony by Barbara Kaplan. Such testimony was not credible, especially in light of the documentary evidence

Re: 13 180 Y 00882 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

including time sheets of such counsel reflecting relevant communications between Barbara Kaplan and her former counsel.

7. Myron Kaplan's offer to Claimants to resolve their claims did not fully disclose the total release he was demanding for limited reimbursement while representing to Claimants that he desired to make full restitution for amounts by which his personal accounts wrongfully benefitted.

8. Myron Kaplan and Barbara Kaplan were both not credible in testimony about conspiracies among CBIC, Baer Stearns, former employees of CBIC and Baer Stearns, former assistants of Barbara Kaplan, attorneys retained by Nathan, Nathan himself, a mythical child of Nathan, the New York Stock Exchange, Barbara Kaplan's former attorneys, and Claimants.

We also make the following findings based principally upon our evaluation of the credibility of the witnesses and our analysis of the documentary evidence and legal arguments:

1. While not definitively established by the evidence, we believe it is likely that there was misallocation of trades by Myron Kaplan and Barbara Kaplan in that they wrongfully allocated favorable trades to the accounts of Myron Kaplan personally and unfavorable trades to the Partnership accounts where such trades were not part of same day same security transactions.

2. We reject the defense of Statute of Limitations based upon alleged imputed knowledge of Jeff Nathan. For the reasons set forth in the Order of the

Page 7 of 13

Re: 13 180 Y 00862 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

Supreme Court of the State of New York County of New York (Justice Cahn) dated August 31, 2005, we conclude that such imputation is not permitted as a matter of law. We further conclude that Respondents did not meet their burden in establishing that Jeff Nathan knew of the New York Stock Exchange investigation or the wrongdoing of Barbara Kaplan prior to 2001. We find that the proof justifies an Award based upon damages back to 1991.

3. We Find that Myron Kaplan and Barbara Kaplan wrongfully prolonged this arbitration proceeding and did not comply with Procedural Orders issued by this Tribunal in that, they failed to provide documents which were correctly the subject of discovery and they persistently sought to introduce documentary evidence as trial exhibits without producing them previously to the other parties in this arbitration proceeding, contrary to the clear Orders of this Tribunal.

4. We Find that the belated attempts by Myron Kaplan and Barbara Kaplan to attack the stipulated findings of the New York Stock Exchange and to create scenarios to explain such evidence are simply not credible.

5. Pursuant to AAA Commercial Rule 43(d)(ii), we find that Claimants and all Respondents other than Myron Kaplan and Barbara Kaplan are entitled to reimbursement from Myron Kaplan and Barbara Kaplan for their legal fees and expenses.

Re: 13 180 Y 00862 05
212 Investment Corporation et al.       Claimants
and
Myron Kaplan and
Kaplan, Nathan & Co. LLC and
Barbara Kaplan,                          Respondents
and
Kaplan, Nathan & Co.                     Nominal Respondent
and
James Nathan,                            Respondent

6. We Find that Myron Kaplan, having defrauded and having consistently breached his fiduciary duties to the Claimants, must disgorge benefits he received from the Partnership.

7. We Find that as a result of her fraud, Barbara Kaplan must pay back to the Partnership brokerage commissions.

8. We Find that the deplorable and reprehensible conduct of Myron Kaplan and Barbara Kaplan justifies an Award of punitive damages against them for the benefit of the Claimants.

9. We Find that Myron Kaplan is entitled to no contribution from Jeff Nathan because Myron Kaplan himself committed significant breaches of trust and of his fiduciary duties.

As such, we AWARD as follows:

1. Within thirty (30) days of the date of this Award, Respondents Myron Kaplan and Barbara Kaplan shall pay the following:

(a) To the Partnership the sum of Sixteen Million, Three Hundred Thirty Six Thousand, Two Hundred Eighty Eight Dollars and Zero Cents ($16,336,288.00) for damages as a result of wrongful allocation of trades.

(b) To the Partnership the sum of Thirty Five Million, Forty One Thousand, One Hundred Thirty One Dollars and Zero Cents ($35,041,131.00) representing the return of Myron Kaplan's performance fees including interest at 9%.

Re: 13 180 Y 00862 05
| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

(c) To the Partnership the sum of Four Million, One Hundred Nineteen Thousand, Five Hundred Three Dollars and Zero Cents ($4,119,503.00) representing commissions earned by Barbara Kaplan plus interest at 9%.

(d) To the Claimants, punitive damages in the amount of Sixteen Million, Three Hundred Thirty Six Thousand, Two Hundred Eighty Eight Dollars and Zero Cents ($16,336,288.00).

(e) To Claimants, the sum of Three Million, Fifty Five Thousand Dollars and Zero Cents ($3,055,000.00) for attorneys' fees and disbursements of Claimants.

(f) To Respondent James (Jeff) Nathan, the sum of One Million, Five Hundred Seventy Two Thousand, Seven Hundred Dollars and Zero Cents ($1,572,700.00) for attorneys' fees and costs of Nathan.

(g) To Respondent Kaplan, Nathan & Co., LLC the sum of Two Hundred Twenty Thousand, One Hundred Sixty Nine Dollars and Zero Cents ($220,169.00) for attorneys' fees and costs less any amount already paid by Myron Kaplan.

2. The administrative fees and expenses of the American Arbitration Association and the compensation of the Arbitrators shall be borne by Respondents Myron Kaplan and Barbara Kaplan, jointly and severally. Therefore, Myron Kaplan and Barbara Kaplan shall jointly and severally reimburse Kaplan, Nathan & Co. LLC the sum of $34,135.16, representing that

Re: 13 180 Y 00862 05

| | |
|---|---|
| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

portion of said fees and expenses in excess of the apportioned costs previously incurred by Kaplan, Nathan & Co. LLC. Myron Kaplan and Barbara Kaplan shall jointly and severally reimburse Kaplan, Nathan & Co. the sum of $34,123.46, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Kaplan, Nathan & Co. Myron Kaplan and Barbara Kaplan shall jointly and severally reimburse James Nathan the sum of $35,623.38, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by James Nathan. Myron Kaplan and Barbara Kaplan shall jointly and severally reimburse Claimants, the sum of $68,485.18, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimants.

3. Respondent Myron Kaplan shall have no role, responsibility or involvement in the management, operation, supervision, winding down, or affairs of Kaplan, Nathan & Co. including the distribution of amounts set forth above and including resolution of the litigation captioned <u>Kaplan, Nathan & Co. v. Nagler & Associates</u> pending in the Superior Court of New Jersey, Bergen County. Docket No. BER-L-928-05.

4. Myron Kaplan's capital account in Kaplan, Nathan & Co. shall be liquidated and used to satisfy the above award with such amount being offset against amounts due from Myron Kaplan and Barbara Kaplan.

Re: 13 180 Y 00862 05
 212 Investment Corporation et al.  Claimants
 and
 Myron Kaplan and
 Kaplan, Nathan & Co. LLC and
 Barbara Kaplan,  Respondents
 and
 Kaplan, Nathan & Co.  Nominal Respondent
 and
 James Nathan,  Respondent

 5. The Steering Committee of Claimants, consisting of Grant Bagan, Jeff Klein, Greg Scott, Robert Schock, and Jim Stone, working with Dechert LLP, James (Jeff) Nathan, and Goldstein Golub & Kessler, will distribute the proceeds of the above Award (except for Item 1(f) which is to be paid to Nathan) to the limited partners of the Partnership. All amounts paid to the Partnership under this Award, after payment of attorneys' fees, as per the fee arrangement with Quinn Emanuel, and repayment to the limited partners of the amount paid by them to date, shall be apportioned to the limited partners according to their respective interests during the time period 1991-2006. Myron Kaplan shall have absolutely no role or involvement in this process. The Partnership shall provide whatever documentation or information that is requested in order to facilitate such distributions.

 6. The claims of Myron Kaplan and Barbara Kaplan for indemnification, reimbursement, and attorneys' fees and all claims against James (Jeff) Nathan are denied.

 7. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

 8. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Re: 13 180 Y 00862 05
    212 Investment Corporation et al.    Claimants
    and
    Myron Kaplan and
    Kaplan, Nathan & Co. LLC and
    Barbara Kaplan,    Respondents
    and
    Kaplan, Nathan & Co.    Nominal Respondent
    and
    James Nathan,    Respondent

_____    _____
Date    John H. Wilkinson

_____1/26/07_____    _____
Date    Eugene I. Farber

_____    _____
Date    Robert Ganz

I, John H. Wilkinson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____    _____
Date    John H. Wilkinson

I, Eugene I. Farber, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____1/26/07_____    _____
Date    Eugene I. Farber

I, Robert Ganz, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____    _____
Date    Robert Ganz

Re: 13 180 Y 00662 05
212 Investment Corporation et al.    Claimants
and
Myron Kaplan and
Kaplan, Nathan & Co. LLC and
Barbara Kaplan,    Respondents
and
Kaplan, Nathan & Co.,    Nominal Respondent
and
James Nathan,    Respondent

___1/26/07___       ___/s/ John Wilkinson___
Date       John H. Wilkinson

_____       _____
Date       Eugene I. Farber

_____       _____
Date       Robert Ganz

I, John H. Wilkinson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

___1/26/07___       ___/s/ John Wilkinson___
Date       John H. Wilkinson

I, Eugene I. Farber, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____       _____
Date       Eugene I. Farber

I, Robert Ganz, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____       _____
Date       Robert Ganz

Re: 13 180 Y 00862 05

| 212 Investment Corporation et al. and | Claimants |
| Myron Kaplan and Kaplan, Nathan & Co. LLC and Barbara Kaplan, and | Respondents |
| Kaplan, Nathan & Co. and | Nominal Respondent |
| James Nathan, | Respondent |

_____          _____
Date                                      John H. Wilkinson


_____          _____
Date                                      Eugene I. Farber

January 26, 2007                  [signature]
Date                                      Robert Ganz

I, John H. Wilkinson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____          _____
Date                                      John H. Wilkinson

I, Eugene I. Farber, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____          _____
Date                                      Eugene I. Farber

I, Robert Ganz, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

January 26, 2007                  [signature]
Date                                      Robert Ganz