IN THE UNITED STATES DISTRACT COURT
FOR THE NORTHERN DISTRACT OF ILLINOIS
EASTERN DIVISION

**FILED**
FEB 1 9 2008
Feb 19, 2008
JUDGE GEORGE M. MAROVICH

| | |
|---|---|
| Barbara R. Kaplan, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-cv-06668 |
| | ) |
| Davidson & Grannum, LLP, et al. | ) Judge George M. Marovich |
| | ) |
| Defendants, | ) |
| ------------------------------------------------- | ) |

### NOTICE OF FILING

PLEASE TAKE NOTICE that on Friday, February 15, 2008, I shall file before the Honorable Judge George M. Marovich of the Dirksen Building, Chicago, Illinois the BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS, a true and accurate copy of which is attached and hereby served upon you.

Gregg Rzepczynski

Gregg M. Rzepczynski
Gregg M. Rzepczynski and Associates, Ltd.
175 West Jackson Ste. 1650
Chicago, Illinois 60604
(312) 939-8028



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

FEB 1 9 2008

Feb 19, 2008

JUDGE GEORGE M. MAROVICH

| | |
|---|---|
| Barbara R. Kaplan | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07-cv-06668 |
| Davidson & Grannum, LLP, | ) Honorable George M. Marovich |
| Sandra D. Grannum & David L. Becker | ) Magistrate Judge Schenkier |
| Defendants, | ) |

## BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION.

This brief is in response to Defendants, Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker's (collectively hereinafter "D&G") Motion to Dismiss based primarily on the belief that New York State is a better forum and jurisdiction to hear Plaintiff, Barbara R. Kaplan's (hereinafter "Kaplan"), malpractice case against the two attorneys and parent law firm that represented Kaplan in several matters both in New York and in Illinois. While two (2) of the issues do have nexus in New York State, three (3) of the counts in the complaint are almost exclusively in Illinois.

While Defendants state that "Illinois has no interest in this dispute" this is patently incorrect since one of the counts concerns the mishandling by Defendants of a claim with the Illinois Department of Employment Security which includes the proper application of Illinois law and D&G's lack of understanding of Illinois Labor law.

Furthermore, D&G representation that all the subject matter relates to witnesses who live and work in New York is also abjectly incorrect. While D&G is a fully licensed law firm in New York and the Defendants themselves are based in the New York area there is in excess of twenty (20) witnesses that Kaplan will be calling in her case in chief with almost all of them located in the Chicagoland area. In terms of those witnesses, some may appear out of state voluntarily, but at great costs to Kaplan. Still

others, would not be subject to the jurisdiction of the New York Courts and their testimony may have to be taken by deposition. Not only is the cost exorbitant, but being only able to present evidence through deposition, rather than in person, is a disadvantage that Kaplan should not be caused to endure. While besides D&G there are only a minimum number of witnesses from the New York area who will be called to testify.

Kaplan does acknowledge that at the present time there is a separate action named, *Davidson & Grannum, LLP v. Barbara Kaplan* in the Supreme Court of the State of New York, County of New York, Index Number 601276/06. However, the New York case involves only defendant *Davidson & Grannum, LLP, as* neither Sandra Grannum nor David Becker are defendants in the New York case. The New York case deals with the recovery of attorney's fees in the amount of approximately fifty thousand dollars ($50,000.00) claimed by D&G against Kaplan. The instant action before this Court involves a claim of legal malpractice with damages exceeding seventy million dollars ($70,000,000.00). Clearly, the Illinois case involves claims that are vastly more significant in both dollar amount and in scope.

D&G states that Kaplan waited more than twenty (20) months from the time D&G filed the New York case to file the instant action against D&G. However, D&G filed it's fee claim case in New York more than one (1) year before there was an award in one (1) of the underlying legal matters. In fact, that matter continues to be litigated at the present time. Kaplan only recently fully discovered the extent of the damages that D&G has caused her presently.

Clearly the doctrine of Forum Non Conveniens does apply here in that Illinois is best suited to hear this matter. Additionally, it is Kaplan's position that the First to File rule should not be applied in this instance and that Illinois law is very pertinent if not exclusive to some of the counts to this instant action. Therefore, this Court should issue an ORDER dismissing the D&G Motion to Dismiss with prejudice and begin the process of hearing this case.

2

## II BACKGROUND FACTS.

The relationship between D&G and Kaplan began when Kaplan was named as a co-defendant with her brother, Myron Kaplan, in a case dealing with her involvement as the registered broker on behalf of her brother and his hedge fund. This matter was filed in New York State and was eventually adjudicated in New York State and was entitled *212 Investment et al. v. Myron Kaplan, Barbara Kaplan et al.* (hereinafter "212 Investment").

This matter dealt with the alleged actions of Kaplan while she acted as a securities broker at several brokerage houses. During this entire time in question Kaplan was domiciled in Chicago, Illinois and all the transactions came from her office in Chicago, Illinois. Any and all witnesses relating to her actions involving these accounts are individuals who were and are presently domiciled in the Chicagoland area.

All the records and documents relating to her involvement in the 212 Investment case originated in Chicago, Illinois and are in all likelihood still located in Illinois. In her complaint Kaplan charges D&G that they breached the standard of care in defending her and also revealed privilege information to opposing attorneys. Because of this action and D&G's performance in several other matters, Kaplan terminated D&G.

In Defendants' brief the 212 Investment case is the only matter that is mentioned. D&G ignored the other matters that D&G was retained to work on but failed to adequately perform in representing Kaplan. This includes the Grimes case whereby one (1) of Kaplan's customers filed a National Association of Securities Dealers (hereinafter "NASD") of Securities Arbitration against Kaplan. This matter was initially investigated by the NASD Department of Market Regulation in Chicago, Illinois. Upon a complete examination by the Chicago NASD Office it was determined that Kaplan did not violate any rules and was cleared of any wrong doing. However the customer still elected to file an NASD arbitration action against Kaplan. Even though the NASD staff determined that Kaplan's actions were in keeping with all the proper rules and regulations of the NASD, Grimes pursued his case, D&G was retained to represent Kaplan at trial since Kaplan's local attorney had medical issues stopping him from traveling. Kaplan won the case but when the opportunity presented itself for D&G to claim damages and attorney's

3

fees for such a frivolous case, D&G dropped the ball and neglected to make such a request.

Additionally, Kaplan sought counsel of D&G with respect to Kaplan's employment issues with her corresponding broker dealer and employer Wunderlch Securities (hereinafter "Wunderlich"). After her separation at Wunderlich in the Fall of 2005, Kaplan was advised to file a claim in this very Federal Forum for discrimination. The claim was filed even though the Equal Employment Opportunity Commission in Chicago, Illinois advised Kaplan and her counsel that there was no evidence of discrimination against Kaplan by her employer. This resulted in the case being dismissed as frivolous and may have cost Kaplan in having to pay for the employer's legal fees in addition to her legal fees.

Shortly after filing the Federal discrimination case, D&G filed on Kaplan's behalf a claim in December 2005 with the Illinois Department of Employment Security (hereinafter "IDES"). This claim was also dismissed by IDES due to inconsistent statements made by D&G. While new counsel attempted to appeal this ruling the Administrative Judge would not grant an appeal or further action on this matter since Kaplan on the advice of D&G filed an identical employment claim in Federal and State court.

Finally, in the past year Kaplan has repeatedly been refused employment by numerous broker dealers in the Chicagoland area. Upon review of her Form U-4, which reflects Kaplan's employment and regulatory history in the securities industry, Kaplan discovered that D&G erroneously put down that Kaplan paid the Grimes customer fifteen thousand dollars ($15,000.00) in order to settle the NASD Arbitration complaint when in reality the Grimes against Kaplan case was dismissed in its entirety. Upon correcting this error, Kaplan was able to secure employment. This error was the direct result of the actions taken by D&G in amending Kaplan's securities license.

The aforementioned error was discovered in the Fall of 2007 and at such time Kaplan elected to pursue this complaint for malpractice. As you can see from this brief summary much of the actions and filings of D&G dealt with more than the 212 Investment case and have direct links to the jurisdiction and laws of Illinois.

### III LAW AND ARGUEMENT

#### A. Forum Non Conveniens

It is stated in the D&G brief that the principle of Forum Non Conveniens is that a court may resist imposition upon its jurisdiction, even when jurisdiction is authorized by the letter of a general venue statute. General venue statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that she may be quite sure of some place in which to pursue their remedy. However, as the Seventh Circuit held *In re Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir. 2003)(citing *Piper Aircraft Co. v Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed 419 (1981):

> Before a court should grant a defendant's motion, the plaintiff's chosen forum must be oppressive and vexatious to the defendant, out of all proportion to the plaintiff's convenience.

In the instant action, no such facts exist to permit defendants to be permitted to move this case out of the state in which plaintiff and most of the witnesses reside.

As further stated in the Motion, the open door may admit those who seek simply justice, but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to herself. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839(1947).

Kaplan's immediate first reaction is how is Chicago, Illinois inconvenient to Kaplan, her numerous witnesses and to her local counsel who has worked with her for more than eight (8) years? For instance, if Kaplan had selected Tennessee where Wunderlich is based as jurisdiction such forum would be inconvenient not only to the Defendants but also to the Plaintiff and such a change in venue would be appropriate based on the limited nexus.

In this matter, the case was initially filed in Cook County Circuit Court and D&G without opposition moved to this forum. Therefore, the case has had one forum change already at the whim of the Defendants. Now, the Defendants are coming back a second time to reject the forum that they already elected back in December 2007. I question why

this motion to dismiss was not made initially in the Cook County Circuit Court instead of this forum.

Additionally, the D&G motion is suggesting that there is some harassment on the part of Kaplan in filing in Illinois. There is no harassment here in Illinois. Kaplan has lived in Illinois her entire life, Kaplan's entire career in the Brokerage industry has been in Chicago, most of all the witnesses to this case are in Chicago and her attorney is based and practices solely in Illinois. At times, during D&G representation of Kaplan, the D&G parties flew to Chicago to have meetings. It was not inconvenient for D&G to do so when D&G was billing Kaplan.

The present matter is not appropriate to apply the principle of Forum Non Conveniens. It is Plaintiff's option to file her claim in her home state of Illinois. Initially, Defendants' did not like that forum of the State Court and moved jurisdiction to the Federal level. Now again Defendants do not like the forum they selected and want another move to a jurisdiction that is clearly inconvenient for the Plaintiff. This Court has the authority to deny the Defendants' motion and move forward in having this matter litigated in the appropriate jurisdiction of Illinois.

### 1. General analysis of Forum Non Conveniens.

A forum non conveniens review takes place in a two (2) tier approach. First, is there an adequate alternative that forum is available then one must weigh the private and public interest factors related to the proper location for the litigation.

Important considerations for a Court's review are those pertaining to the private interests of the litigants. Such interests include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of a jury view of premises; and all other practical problems that make a trial of a case easy, expeditious and inexpensive. *Gulf Oil Co. V Gilbert* at 508.

With respect to public interest the doctrine is also applied with respect to the jury. Should a jury have to bare the duty to hear litigation where there is a lack of nexus between the community and the litigants. It is certainly in the interest of the community to hear matters stemming from their own community.

6

There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Gulf Oil Co.* at 508-509.

Now at present time there is another forum for the parties to litigate this matter. That forum is not the New York State Court but the State Court of Illinois, where this matter was originally filed. Plaintiff first selected that forum and was amenable to having the case heard there. Instead D&G moved this matter to the present Federal Court and are now seeking a second move to a forum that is greatly inconvenient to the Plaintiff, her witnesses and to her attorney.

The Defendants have been granted one (1) change of venue and they should now live with the current choice they have made via the initial motion to change venue.

### 2. Reviewing the private interests of the parties.

Again Kaplan states that this matter deals with the actions of Kaplan while she was domiciled and worked exclusively in Chicago. In fact Kaplan was never licensed to do business as a broker in New York during the time of D&G's representation.

Indeed if Defendants believe that Kaplan intends to present no witnesses except herself then Defendants are correct she is the sole Illinois witness. Quite the contrary, Kaplan has numerous witnesses that she intends to call with respect to this matter. This includes the following:

    a. Martin Israel, (Chicago, Illinois) Husband to Plaintiff who works in Chicago, Illinois.

    b. Ron Meyers, (Wheaton, Illinois) Recruiter specializing in the securities business who has been retained by Kaplan.

    c. Myron Kaplan (New Jersey) Brother of Kaplan.

    d. Craig Gould (Chicago, Illinois) Branch Manager of Wunderlich who Kaplan reported to at Wunderlich.

    e. Diane Marlowe (Hammond, Indianan) An associate to Kaplan who works in Chicago, Illinois.

    f. Ken Witry (Chicago, Illinois) Former trader at Bear Stearns who worked with Kaplan and who still works in Chicago, Illinois.

g. Ian Williams (Chicago, Illinois) Former assistant to Kaplan which employed at Wunderlich.

h. Sheilah McFadden (Philadelphia, Pennsylvania) Former assistant to Kaplan while Kaplan worked at Bear Stearns in Chicago.

i. Roseanne Crimo (Chicago, Illinois) Former assistant to Kaplan while Kaplan worked at Bear Stearns and CIBC Oppenheimer in Chicago.

j. Carol Malazzo (Chicago, Illinois) Investigator for the EEOC who handled the investigation of Kaplan's claim against Wunderlich.

k. Tameco Taylor (Chicago, Illinois) Wage Claims Specialist for the Illinois Department of Employment Security who handled the Kaplan investigation.

l. Judge Claudia Manley (Chicago, Illinois) Administrative Judge for the Illinois Department of Employment Security who dismissed the Kaplan claim in Chicago, Illinois.

m. Adrienne Metcalf (Chicago, Illinois) Employee of LaSalle Bank

n. Marshall Blankenship (Chicago, Illinois) Attorney in Chicago, Illinois who co-counseled with D&G concerning the Federal Case filed against Wunderlich.

o. James Syke (Chicago, Illinois) Client of Kaplan who testified before the NASD Regulatory Department via affidavit concerning the Grimes Complaint.

p. Dan Tunick (Chicago, Illinois) Investigator and attorney who is employed by the Illinois Secretary of State's office that investigated Kaplan. Unfortunately, Mr. Tunick is blind and would have a difficult time traveling.

q. Laura Ott (Valparaiso, Indiana) Trader who worked with Kaplan concerning the trading for the 212 Investment case at Bear Stearns in Chicago, Illinois.

r. Karen Mann (Houston, Texas) Assistant who worked with Kaplan during the time of the 212 Investment case at Bear Stearns in Chicago, Illinois.

  s. Tracy Wiswall (Memphis, Tennessee) Compliance officer for Wunderlich during the time Kaplan was employed there.

  t. Any and all NASD investigators who worked on the Grimes NASD regulatory investigation.

  D&G only noted the opposing attorneys in the 212 Investment case as witnesses to this case and several other witness who are not identified by name. The attorneys at the law firm of Quinn Emanuel Urquhart Oliver & Hedges LLP have significant resources and it would not be a burden for any of them to come to Illinois. Almost all the witnesses in the brokerage industry are employed in Chicago, Illinois and their testimony deals with actions in Illinois.

  Clearly, the cost of bringing the numerous witnesses to New York and to have them ready for both depositions and trial testimony would be enormous.

  Therefore, it is in error to believe that only Kaplan is the only witness for her case and it would only inconvenience her to move the case to New York.

  With respect to access to the material evidence, all the transactions to the 212 Investment case originated in Chicago, Illinois and said records would still be housed in Illinois. Furthermore each of the investigations either by the NASD, EEOC or IDES that will be pertinent to this case originated, were conducted and are housed here in Chicago, Illinois.

  In summary, all the actions of Kaplan relate to her in Chicago, Illinois. Almost all the witnesses, even the ones relating to the 212 Investment case either were in Chicago, Illinois or are still in Chicago, Illinois. All of the documents are for actions that occurred in Illinois. One (1) of the counts in Kaplan's complaint deal exclusively with Illinois Labor Law. For the aforementioned arguments, this matter should remain before this Court Venue.

3. **Reviewing the Relevant Public Interests.**

  In review of the Public Interest aspect, Kaplan will respond to each of the arguments of D&G. First, while D&G focuses on the 212 Investment case, it involves all of Kaplan's actions while in Chicago. Kaplan is not even licensed in the State of New York nor was Kaplan licensed in New York while first employing D&G. Kaplan has no

9

business ties with New York whatsoever. All of witnesses and documents relating to the 212 Investment case and Kaplan concerns Chicago, Illinois

Secondly, while the 212 Investment case occurred in New York, D&G ignores the other matters they were involved in. Specifically, the IDES matter and the Federal lawsuit in this very jurisdiction that involved D&G. It is appropriate that an Illinois jury and Court hear matters that deal solely with Illinois law and matters that occurred in Illinois.

Finally, with respect to Count Six (6) of Kaplan's Complaint whereby there is a allegation of breach of New York State Judiciary Law Section 487, D&G admits that this Court would be able to read and interpret the New York State Judiciary Law Section 487. Therefore this should not be an issue, since the aforementioned arguments outweigh the additional effort to have to review the foreign statute.

### 4. Plaintiff's Choice of Forum.

The presumption is in favor of the Plaintiff's choice of forum. In this instance Plaintiff selected the Circuit Court of Cook County, Illinois as the initial forum. Because it meets the criteria, D&G moved this matter to the current Federal jurisdiction. Now this choice of forum is being disputed, and again D&G wants a second move to another forum. How many more venues will the Defendants seek again and again until they reach conclusion? The Defendants have had one (1) transfer already.

In summary, the actions of Kaplan happen exclusively in Illinois, almost all of Kaplan's witnesses are based in Illinois and almost all the documents except those documents held by D&G are housed in Illinois. Plaintiff's choice of forum far outweighs any argument presented by the Defendants.

### B. The First to File Rule.

In their argument the Defendants cite *Martin v Graybar Electric Co.* 266 F. 2d 202 (7th Cir. 1959), whereby the Court dealt with the issue of a defendant party in an Illinois action filing an action in Iowa four (4) days after being served with the Complaint in the Illinois case. The Plaintiff in the original case moved the Court to issue an injunction barring litigation of the second-filed action which was granted. In deciding the case, the Court in *Martin* relied heavily on the fact that the issues were identical and so were the parties. More particularly, the Court held that

> Thus two facts were self-evident and undisputed when Martin filed his motion for injunction: a) there were two actions between the same parties involving identical issues pending at the same time in two United States District Courts, and b) this action was filed first and was pending when Graybar filed its suit in Iowa.

*Id.* at 203.

In the instant action before this Court, while the New York action was started prior to the Illinois action, the parties are not the same and the issues are not identical. Contrary to the case law cited by Defendants, the fact that a malpractice action and fee case may have similar issues, that in itself does not establishe that the cases involve identical issues for purposes of applying the First to File Rule.

In applying the *Martin* case to the issue at hand one must look at two (2) issues, one of timeliness and also that of concurrent litigation. First, as to timeliness, the D&G fee dispute was filed in April 2006. At such time the 212 Investment case was not even tried and completed and no ruling or judgment had been issued. It was almost twenty (20) months later after the adjudication of the 212 Investment case and after the discovery of D&G errors on Kaplan's Broker's license did Kaplan file this lawsuit.

Secondly, the two (2) cases do not mirror each other and are not concurrent. The fee dispute concerns only the law firm and not the individual attorneys, one of who is no longer associated with the law firm. Additionally, the subject matter does not mirror the two cases. D&G has been paid a large sum of money and is owed on part of their aggregate billing. Kaplan is bringing suit on all the actions of D&G and the actions of the individual attorneys. For D&G this is a single issue case but for Kaplan there are multiple counts and multiple issues that deal with complex issues that span several different administrative and judicial court settings some of which are located in Illinois.

Further, the D&G matter in New York is well advanced, after almost two (2) years of litigation it should be undisturbed as the matter moves forward to conclusion. As previously stated, it dealt with one (1) issue concerning billing and payment for services. It would make logical public policy to allow the matter to finally be completed and allow this new matter to move forward which deals with the issues of malpractice by all three (3) Defendants.

11

Defendants also seek to rely upon the case of *Colorado River Water Conservation District v United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976). However, a review of the ten (10) criteria set forth therein fails to provide support for dismissal. In the instant action, the Illinois Federal Court is not inconvenient for the parties, the issues are not identical and for the most part, the claims of malpractice play no part of the fee case. Also, Illinois law will need to be applied in the malpractice case, as much of the legal work related to matters pending or related to Illinois.

In terms of protecting the rights of Plaintiff, the majority of the witnesses are located in Illinois, which result in live testimony as opposed to taking out of state depositions for use at trial. Also, there are no grounds to believe that the malpractice claim is contrived, as the evidence of prior malpractice by defendant Grannum under similar circumstances resulted in a finding against said defendant in an action venued in California. See Complaint at ¶ 50.

Finally, there no question that Illinois has jurisdiction over the malpractice action and there has been no discovery in New York on the issue of malpractice, as no claims were made in that case. Additionally, the Court in New York need not accept the transfer of the case from Illinois, as the right to amend is subject to the discretion of the New York Court. Upon a review of all the facts, the First to File Rule and *Colorado River* do not apply to the instant action and the Illinois matter should be permitted to proceed.

**C. Illinois Substantive Law's (735 ILCS 5/20619) application to matter**

735 ILCS 5/2-619 provides in part the following:

> (a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds....
> And
> (3) That there is another action pending between the same parties for the same cause.

First, with respect to Defendants' argument, Kaplan fails to see why this argument was not offered in the State Court of original jurisdiction. D&G already has taken one (1) transfer of venue from the Illinois State Court to Illinois Federal Court. Will D&G continue on this course and again mover to a third jurisdiction? It is our view that one

transfer was requested and granted. The Defendants made their choice with said transfer to this Court and they must live with that choice.

Second, the action in New York does not mirror this action. It deals with just the law firm (one (1) of the Defendants) seeking fees. It does not deal with the individual lawyers, one (1) of who is not currently associated with the firm. Furthermore, the suit deals with legal fees on the matter of the 212 Investment Case. It does not deal with the Grimes case since those fees were already paid.

Finally, the D&G claim deals with legal fees to the law firm for approximately fifty thousand dollars ($50,000.00). This current claim far exceeds that amount by over seventy million dollars ($70,000,000.00). It is apparent that this is not the same parties and not the same cases.

### IV. SUMMARY

This motion seeks the transfer of the pending case of Barbara R. Kaplan against Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker to the New York State Court based on a Motion to Dismiss even though Defendants have already transfer this case once from the Illinois State Court to this jurisdiction. It is our position that for the aforementioned arguments Illinois is the best jurisdiction to hear this matter regardless that one of the Defendants has a pending fee disputes in New York. Therefore, Barbara R. Kaplan moves this Court for an Order denying Defendants' Motion to Dismiss and request that this matter move forward in the present jurisdiction.

Respectfully submitted,

Gregg Rzepczynski & Associates Ltd.

By: /s/ Gregg M. Rzepczynski

Gregg M. Rzepczynski (#6200348)
Gregg M. Rzepczynski & Associates Ltd.
175 West Jackson Blvd. Suite 1650
Chicago, Illinois 60604
Tel (312) 939-8028
Fax (312) 922-1794
AttyGmr@gmail.com

13