IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA R. KAPLAN, <br><br> Plaintiff, <br><br> v. <br><br> DAVIDSON & GRANNUM, LLP, SANDRA D. GRANNUM & DAVID L. BECKER <br><br> Defendant. | Case No. 07C 6668 <br><br> JUDGE MAROVICH <br><br> MAGISTRATE JUDGE SCHENKIER |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff essentially argues four points in an attempt to avoid dismissal of this matter under the doctrine of *Forum Non Conveniens*, Illinois' "First to File" rule, or 735 ILCS 5/2-619. She argues that:

1. the prospective witnesses to be called in support of Plaintiff's legal malpractice allegations (Illinois residents) would be inconvenienced by litigating this matter in New York;

2. the ancillary aspects of Plaintiff's malpractice claims dictate that this matter be litigated in Illinois, because (as she argues) those claims are related to Illinois;

3. the instant action should not be brought as a counterclaim to the previously-filed New York fee claim because Plaintiff's allegations of liability in the present matter are beyond the four corners of the New York pleadings, and thus the two matters are not related; and

4. because Defendants previously transferred this matter from the Circuit Court of Cook County to this Court, Defendants' Motion should be viewed as seeking a "second transfer."

As discussed below, not one of these arguments is either supported by affidavit or can withstand any degree of legal scrutiny. Because three separate rationales for dismissing this matter apply, Plaintiff's Complaint should be dismissed so that Plaintiff can re-plead her

466320.3

allegations against Defendants as a counterclaim to Supreme Court of the State of New York, County of New York, Part 10, Case No. 601276/06.

A. **PLAINTIFF'S ARGUMENT REGARDING THE CONVENIENCE OF WITNESSES DOES NOT WITHSTAND SCRUTINY**

In their Motion to Dismiss, Defendants argued that under a *forum non conveniens* analysis, the witnesses most relevant to Plaintiff's legal malpractice claims are located in the New York metropolitan area. *See* Motion to Dismiss at 6-7. In response, Plaintiff identifies 19 potential witnesses. However, she does so without identifying or explaining their relevance to Plaintiff's legal malpractice claims, and without providing any affidavit or other evidentiary support for the assertions made in her brief.[1]

When weighing the convenience of the witnesses in a motion to dismiss for *forum non conveniens*, courts must consider the **materiality**, **nature** and **quality** of each witness, not merely the number of witnesses in each locale. *Hanley v. Omarc, Inc.*, 6 F.Supp.2d 770, 775 (N.D. Ill 1998).

With respect to the *212* case, Plaintiff alleges in her Complaint that Defendants are liable for malpractice because:

    a.  Defendants filed an unnecessarily long and detailed answer to the Complaint, which "greatly ruined the case" for Plaintiff. *See* Complaint at Paragraph 21;

    b.  Defendants failed to disclose the alleged conflict of Mr. Becker. *See* Complaint at Paragraphs 66-73;

    c.  Defendants disclosed privileged information to the 212 plaintiffs. *See* Complaint at Paragraphs 74-79; and

    d.  Defendants engaged in unauthorized settlement discussions. *See* Complaint at Paragraph 24.

---

[1] Each of these witnesses and their alleged location which are identified in the body of the brief, are listed without any foundational support. As such, they are simply assertions by counsel. These assertions should not carry any weight in the context of Defendants' Motion to Dismiss on *forum non conveniens* grounds. See analysis *infra*.

Each of these allegations of malpractice stem from Defendants' handling of the case. Thus, it is reasonable that the only "witnesses" to such malpractice would have to be associated with the case. Those are the witnesses identified by Defendants in their affidavits. They include opposing counsel (the recipients of the alleged privileged communications)[2] and the arbitration panel – which dealt with the question of the unauthorized settlement discussions, and which received this purportedly improper Answer.[3] Meanwhile, Plaintiff does not explain how any of her supposed witnesses can offer relevant testimony regarding the alleged malpractice of Defendants. As such, the record before this Court demonstrates that the convenience of the witnesses clearly supports dismissal of this action in favor of the action in New York.[4]

With respect to the *Grimes* matter, Plaintiff alleges that Defendants are liable for malpractice because Defendants did not recover Plaintiff's damages at trial, Defendants billed an excessive amount of fees and costs in defending the case, and Defendants failed to properly report the result of the *Grimes* matter to the NASD. *See* Complaint at Paragraphs 27-41.

The only witnesses who have knowledge of the facts alleged in the Complaint with respect to the *Grimes* matter are Defendants, and perhaps opposing counsel. Again, Plaintiff

---

[2] For the disclosure of privileged information, the only reasonable "witnesses" would be Defendants and opposing counsel, and perhaps the other counsel retained by Plaintiff in New York. Plaintiff in her brief identifies the three witnesses who were allegedly improperly disclosed. Yet they have no information about how they were disclosed. Further, their testimony is already part of the underlying record. Thus, it would be unnecessary to take further testimony from them. Indeed, such testimony would be irrelevant to Plaintiff's attempt to state a malpractice claim against D&G, given that the arbitration panel noted the witnesses' testimony "established the regular practice of Barbara Kaplan ... of wrongfully placing orders without account or customer designations and then later reallocating these trades giving favorable prices to the personal accounts of Myron Kaplan over the Partnership accounts." *See* Exhibit 6 to Motion to Dismiss at 4. Such testimony would only further the argument that Plaintiff has unclean hands in this case.

[3] The arbitration panel hearing the 212 Case found allegations of unauthorized settlement discussions "not credible" based upon its review of D&G's time-sheets reflecting communication between D&G and Kaplan regarding settlement discussions. *See* Exhibit 6 to Motion to Dismiss at 6.

[4] At best, only Myron Kaplan, Plaintiff's co-defendant in the 212 Case and one of Plaintiff's 19 alleged witnesses, can offer testimony relevant to Plaintiff's legal malpractice claims. He would actually be more inconvenienced by appearing in Chicago than in New York as he lives the New York metropolitan area.

does not identify a single witness who has knowledge of the facts which support her claim for malpractice, who lives in any location outside of the New York metropolitan area.

Finally, with respect to the *Wunderlich* matter, Plaintiff alleges that Defendants filed claims with the Illinois Department of Employment Security ("IDES") on her behalf and that these claims were dismissed due to "inconsistent statements" made by Defendants. Plaintiff also alleges that Defendants filed a frivolous lawsuit on her behalf, which subjected the Plaintiff to the potential of paying Wunderlich's attorney fees. *See* Complaint at 53-60.

Plaintiff purports to disclose seven witnesses who she allegedly will call in support of her allegations against Wunderlich. However, this Court's consideration of the materiality, nature and quality of the testimony these witnesses could potentially offer does not support litigation of this matter to Illinois.[5] Indeed, because Plaintiff fails to identify how any of the witnesses (who purportedly live in Illinois) would actually provide material testimony in support of her claim of malpractice against Defendants, they should not be considered in balancing Plaintiff's choice of forum with the convenience of Defendants.[6] *See e.g. Yourtravelbiz.com, Inc. v. Exec. Sys. Of United Success, LLC*, 2007 U.S. Dist. LEXIS 32222 (S.D. Ill. 2007) (Where it is unclear to the Court what the nature of a witness' testimony will be, the Court cannot weigh their inconvenience as a factor in determining the proper forum).

Finally, Plaintiff's counsel asserts (again without any evidentiary support) that the records and documents related to the *212* case are in all likelihood still located in Illinois. *See*

---

[5] Plaintiff is vague regarding the identity of the witnesses she allegedly intends to call in support of her claims, making it impossible to determine what testimony could be offered by witnesses such as Adrienne Metcalf, identified by the Plaintiff as "an employee of LaSalle Bank."

[6] With respect to the actions brought before the IDES on Plaintiff's behalf, Plaintiff alleges that she will call the Wage Claims Specialist for IDES who handled her claim (Tameco Taylor); the Administrative Judge who dismissed the claim (Judge Claudia Manley); an investigator employed by the Illinois Secretary of State (Dan Tunick); her former assistant at Wunderlich (Ian Williams) and two other Wunderlich employees (Craig Gould and Tracy Wistwall). She does not explain how these witnesses can help her prove her claim that Defendants' committed malpractice by making "inconsistent statements."

Brief in Opposition at 3. This is of no relevance. Plaintiff's claim alleges legal malpractice and the documents related to Plaintiff's legal malpractice claim are maintained by Defendants, in New York. *See* Exhibit 6 to Motion to Dismiss. Plaintiff fails to explain how any other documents are relevant to the issues before the Court. Plaintiff also fails to identify the specific documents to which she is referring.

In sum, while Plaintiff purports to identify 19 witnesses to support her claim that this matter should be litigated in Illinois, and contends that documents relevant to her claims exist in Illinois, these assertions are wholly unsupported and unexplained, and therefore, do not provide a rationale for denying Defendants' Motion to Dismiss under a *forum non conveniens* analysis.

**B.   PLAINTIFF'S ANCILLARY CLAIMS DO NOT SUPPORT ILLINOIS' INTEREST IN THIS MATTER**

Plaintiff's contention that Illinois, rather than New York, has the most interest in this matter (the public interest aspect of the *forum non conveniens* analysis) ignores the most salient issue of the public interest analysis: that any claim alleging attorneys licensed in New York committed legal malpractice in performing some, or all, of their work on behalf of a client in New York, must be an issue which is most important to the State and people of New York.

The application of the private and public interest factor varies with the final outcome being heavily dependent on the unique facts of the particular case. Therefore, in its discretion, a court must carefully weigh those factors, none of which is alone determinative, to ascertain whether the balance is strongly in favor of the defendant. *Vlasic v. Wyndham International, Inc.*, 451 F. Supp. 2d 1005, 1008 (C.D. Ill. 2006) citing *Gulf Oil Corp. v. Gilbert*, 300 U.S. 501, 508 (1947).

In examining Plaintiff's assertion that Illinois has some stake in the outcome of her legal malpractice claim against her attorneys, it is clear that her focus is merely on ancillary issues,

while the focus of this Court must be on the substance of the claims actually being asserted against the Defendants and where the alleged malpractice actually took place.

For instance, Plaintiff's complaint alleges several theories of liability against Defendants. In total, Plaintiff alleges her potential damages in this claim exceed $70,000,000. *See* Brief in Response at 2, 13. It is undisputed that the overwhelming majority of these alleged damages arise from Plaintiff's involvement in the *212* case, where damages were found against her and her co-defendant in the amount of $76.8 million. There is no question that all of the alleged "malpractice" of Defendants took place in New York, where the *212* case was litigated by Defendants.

Meanwhile, the *Wunderlich* matter, where Plaintiff claims that Defendants filed a frivolous claim on her behalf, exposing her to potential liability for attorney fees, is the best and only real link between the present case and the State of Illiois. However, the docket of the *Wunderlich* case establishes that no such liability was found against the Plaintiff. *See* Exhibit 1 to Defendant's Reply Brief. Thus, it is clear based upon information from which this Court can take judicial notice that Plaintiff has no actual damages for the *Wunderlich* claim. As a result, Plaintiff cannot be permitted to shoehorn a $70 million New York legal malpractice lawsuit into the Illinois courts based upon a secondary claim of malpractice, allegedly occurring in Illinois, but for which Plaintiff cannot actually state any damages.[7]

With respect to the *Grimes* matter, Plaintiff herself acknowledges that this matter was arbitrated in New York. *See* Complaint, paragraph 32. While certain parts of the planning of

---

[7] Plaintiff's Complaint alleges damages from her alleged loss of her state court claim in the *Wunderlich* matter of $125,000, plus a disgorgement of fees paid to D&G. *See* Complaint at Paragraph 88. Given the fact that Plaintiff now complains that her claims against Wunderlich were, in fact, frivolous, it is impossible to see how she lost a claim of any value whatsoever. In any event, this amount is less than 0.25% of Plaintiff's claimed damages arising from the *212* Case. It is not a real issue. It is merely a sideshow to try to force Defendants to litigate Plaintiff's real claim in an inconvenient forum.

that matter are alleged to have taken place in Illinois, the alleged malpractice did not take place in Illinois, it took place in New York, during the arbitration, where Plaintiff claims Defendants did not seek fees against Plaintiff's opponent in the arbitration. As such, the only salient facts relating to the *Grimes* matter took place in New York. Again, this signals New York's interest in the outcome of this matter, not Illinois.[8]

Because the bulk of Plaintiff's claims, both in terms of facts and dollars, are based in New York, it is clear that, on balance, New York, not Illinois, has the most interest in the outcome of this case, and therefore, New York is the most convenient forum to adjudicate the disputes between the parties.

C.  **THE NEW YORK ACTION AND THE PRESENT MATTER ARISE FROM A COMMON SET OF OPERATIVE FACTS AND CAN BE CONSIDERED THE SAME CAUSE OF ACTION**

Plaintiff advances several less-than-compelling arguments that the two cases between the parties are distinguishable and therefore, the parallel action before this Court should not be dismissed under the "First to File" rule.

Initially, Plaintiff contends that, because the parties are not exactly the same in the two actions and because the amounts in controversy are different, the case in Illinois and the case New York "do not mirror each other." In essence, using these few cosmetic facts, Plaintiff attempts to paint the present action, and the action in New York, as distinct actions, and

---

[8] The assertion related to the responsibility for amending Plaintiff's Form U-4 with the NASD is also a red herring. The responsibility to amend a U-4 form rests with an individual broker-dealer, who is under a continuing obligation to amend and update information required by a Form U-4 as changes occur. *See* Exhibit 2 to Defendants' Reply Brief, Form U4 Uniform Application for Securities Industry Registration or Transfer. As such, Plaintiff cannot recover based upon her allegations that Defendants failed to properly amend her U-4 form. Indeed, since it was her specific responsibility (and the responsibility of her broker-dealer) to ensure the updated accuracy of her information with the NASD, this aspect of her allegations against Defendants should be given no consideration. Nevertheless, even if Defendants' had responsibility to update Plaintiff's U-4 form, this would have been accomplished in New York, where Defendants maintain their office. Certainly, there would not have been any reason to travel to Chicago for the submission of a form.

7

466320.3

therefore, not subject to Defendants' arguments regarding "the First to File" rule or pursuant to 735 ILCS 5/2-619(a)(3).

Plaintiff all but ignores the legal authority cited by Defendants which demonstrates that the two cases can be considered "the same case" since they arise from a common nucleus of facts. Here, there is no dispute that the two cases arise out of the same set of facts. For instance:

- Both actions concern work performed by Defendants for Plaintiff; and, in particular, actions performed in the *212* matter and the *Grimes* matter.

- In order to effectively prosecute the claims against Plaintiff in New York, Defendants must prove that they earned the monies being sought from Plaintiff. Meanwhile, In order to effectively prosecute the claims against Defendants, Plaintiff must prove that Defendants breached their duties to her (and therefore did not earn what they are seeking from Plaintiff). Thus a common set of facts will determine the verdicts in both cases.

- Plaintiff is raising the same issues as affirmative defenses in the New York action that she is raising as a source of affirmative relief in the Illinois action. For example, affirmative defense number 5 in the answer filed by Plaintiff in New York asserts that David Becker had a conflict of interest in representing Plaintiff in the *212* action based upon his former position with CIBC. In Count II of the Illinois action, Plaintiff makes the same exact claim against Becker.

- While the Amended Complaint filed by Defendants in New York does not discuss the *Wunderlich* matter which is an issue in the Complaint filed by Plaintiff in Illinois, Plaintiff herself has injected the *Wunderlich* matter into the New York case, as described in the Court's order denying her motion to dismiss, dated March 23, 2007. See Ex. 9, p. 4.

- Both the New York and Illinois suits address the circumstances of the termination of Defendants as counsel for Plaintiff.

There is a dearth of case law describing what is meant by the "same case" in the context of the "First to File" rule. Nevertheless, as explained in Defendant's opening brief, for a parallel analysis this Court need look no further than the doctrine of *res judicata*. Under that doctrine, a later cause of action is only barred if it is the ***same*** as the earlier cause of action, which has already been adjudicated. In that context, "same" means "consisting of a single core of operative facts which give rise to a remedy." *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir.

1988) (noting that under the "federal definition of a cause of action" a plaintiff must "allege in one proceeding all claims for relief arising out of a single core of operative facts"); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) ("in determining the scope of a 'cause of action,' this circuit has utilized the 'same transaction' test.") *see also Role Models America, Inc. v. Penmar Development Corp.*, 394 F. Supp. 2d 121, 130 (D.C.D.C. 2005) (In determining whether two actions arise from a single core of operative facts, courts investigate whether the claims are "related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.") This is the analysis that this Court should use here to determine if the New York action is the "same" as the action filed by Kaplan in Illinois.

As demonstrated herein, Defendants' representation of Plaintiff for several legal matters including the *212* matter, the *Grimes* matter and the *Wunderlich* matter; the termination of the relationship between the parties; and each party's claim against the other following the termination – Defendants' claim for unpaid bills and Plaintiff's claim of malpractice – all arise out of the same set of transactions. They all arise out of the provision of legal services to Plaintiff by Defendants. Moreover, the two sets of claims (here and in New York) are related in time, space and origin (again, beginning with Plaintiff's request that Defendants represent her in one matter, leading to Defendants' representation of her in other matters, etc, and then culminating in Plaintiff's discharge of Defendants). As such, these facts form a convenient trial unit in which all claims of the parties can be litigated at once in a single forum.[9]

---

[9] This argument has the same application under 735 ILCS 5/2-619(a)(3). In fact, the "same cause" requirement under 735 ILCS 2-619(a)(3) is satisfied when relief is requested on substantially the same state of facts. *Fofi Hotel Co. v. Davfra Corp.*, 1993 U.S. Dist. LEXIS 10879 (N.D. Ill. 1993) (the crucial inquiry is whether the two actions arise out of the same transaction or occurrence).

466320.3

Further, the case law in both New York and Illinois supports the notion that disputes between lawyers and clients about the quality of legal services rendered, and allegedly unpaid invoices, occur in the same lawsuit. *See e.g. John Grace & Company, Inc. v. Tunstead, Schecter & Torre*, 186 A.D. 2d 15, 588 N.Y.S. 2d 262 (1st Dep't 1992); *Bennett v. Gordon*, 282 Ill. App. 3d 378, 668 N.E. 2d 109 (1st Dist. 1996).

As such, regardless of the amount of damages claimed, or whether the parties to the dispute are exactly the same, the facts before the Court establish that the two claims can be considered the same, since they arise from a common set of operative facts. Therefore, litigation in two courts should be avoided as a matter of public policy and judicial economy. In fact, allowing the matter to proceed in two separate jurisdictions creates the possibility of inconsistent verdicts, a result which could call into question the decisions of both courts.

Plaintiff also contends that the New York action is "well-advanced after almost two years of litigation" and thus suggests that she might be prejudiced in bringing the claim in New York. *See* Brief in Opposition at 11. Plaintiff's argument supplies no evidence to support this proposition, and, in fact, ignores the docket and written record in the New York matter which evidences that Plaintiff filed an Amended Answer in the case (where she could have filed her counterclaim) on or about October 15, 2007, just a couple of weeks before filing the present case. That matter is not yet set for trial, and the parties have agreed to extend the deadline for filing dispositive motions until after a resolution of the matters before this Court. *See* Exhibit 3 to Reply Brief, Affidavit of Sandra Grannum. *See also* Exhibits 1 and 4 to *Motion to Dismiss*.

Further, D&G will not oppose any effort by Plaintiff to amend her Answer for purposes of filing a Counter-claim in the New York matter. See Exhibit 3 to Reply Brief. Therefore, there would be no prejudice to Plaintiff filing her counterclaim in that action.

10

466320.3

Plaintiff's argument also defies traditional notions of equity. Assuming *arguendo* that the New York matter is well advanced now, it certainly was not well advanced on November 1, 2007 when Plaintiff initiated this litigation, a date less than three weeks after Plaintiff filed an Amended Answer in the New York action. Plaintiff also could have sought leave to plead her allegations of legal malpractice after the arbitration panel ruled against her in the *212* Case in January, 2007 (when her cause of action arguably accrued) or when the trial court confirmed the arbitration panel's decision in July, 2007. She failed to do so. Plaintiff cannot rely upon her own lack of diligence to support an assertion of prejudice due to being forced to litigate her claims in the proper forum.

Finally, while Plaintiff argues that the parties in the New York action are not the same as the parties in the present matter, there is no question that Plaintiff can seek leave from the New York court to join parties to the New York action to address this issue. As the individual defendants are both present in the New York metropolitan area, this will obviously not be difficult to do.

In short, the notion that the New York and Illinois actions are not "the same" as this concept is interpreted by courts in Illinois and elsewhere has not and cannot be supported by Plaintiff. As such, she should be required to litigate the legal malpractice claim in New York, where the same set of operative facts is currently being addressed by the court there.

**D.    REMOVAL TO THIS COURT IS IRRELEVANT TO A DETERMINATION OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff also argues, without citation to any case law, that Defendants' removal of this action from the Circuit Court of Cook County to this Court should somehow bar Defendants'

466320.3

subsequent Motion seeking dismissal on *forum non conveniens* or 735 ILCS 5/2-619(a)(3) grounds.[10]

Defendants are hardly the first defendants to remove a case from a state court to a federal court and then seek dismissal on *forum non conveniens* grounds. In fact, courts routinely permit Defendants to remove and then seek dismissal based upon improper forum. *See e.g. Merrill Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986); *Davis International, LLC v. New Start Group Corp.*, 488 F. 3d 597 (3rd Cir. 2007) (finding that the law does not support the argument that a Defendant cannot challenge forum after removal); *Gschwind v. Cessna Aircraft Co.*, 232 F. 3d 1342 (10th Cir. 2000); *P.T. United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F. 3d 65, 73 (2nd Cir. 1998) (affirming *forum non conveniens* dismissal after removal); *Baumgart v. Fairchild Aircraft Corp.*, 981 F. 2d 824 (5th Cir. 1993); *Prack v. Weissinger*, 276 F. 2d 446 (4th Cir. 1960) ("we are of the opinion that a removed action to which a Federal District Court applies the doctrine of *forum non conveniens* need not be remanded, but may be dismissed").

In the present matter, Defendants removed Plaintiff's claim to this Court on diversity grounds. Immediately following removal, Defendants filed their motion seeking dismissal on *forum non conveniens* grounds. It is hornbook law that following removal, a federal court "takes the case up where the state court left it off." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436 (1974). Based upon the legal authority cited above, once this case was removed to this Court, Defendants retained their right to seek a dismissal of this matter on *forum non conveniens* grounds, just as they would have been able to make this argument before the Circuit Court of Cook County. Courts from around the country have rejected

---

[10] Plaintiff appears so perturbed by Defendant's procedural actions that she raises this argument FIVE times in her *Brief in Response to Defendants' Motion to Dismiss* (See *Brief in Response* at 5, 6, 7, 10 and 12). No matter how many times she raises it, the argument remains legally unsupportable.

Plaintiff's argument that Defendants' removal waives or in any precludes dismissal based upon *forum non conveniens* grounds.[11]

Plaintiff's legal malpractice action was filed three weeks after Plaintiff declined to state a counterclaim in her answer to Defendants' Amended Complaint in an action for fees filed by Defendants against Plaintiff in New York. The two cases arise from the same nucleus of facts and should be tried together, in one forum. The Courts, the parties and the witnesses should not be subjected to two parallel actions arising from these same operative facts.

As such, for the reasons stated in its Motion to Dismiss and this Reply Brief, Plaintiff's Complaint should be dismissed so that she can file her claims in the proper forum, New York.

Respectfully submitted,

**DAVIDSON & GRANNUM, LLP;**
**SANDRA D. GRANNUM AND**
**DAVID L. BECKER**

By: __/s/ Daniel E. Tranen__
One of their attorneys

Daniel E. Tranen
Geoffrey A. Belzer
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
Telephone: (312) 704-0550
Facsimile: (312) 704-1522
Daniel.Tranen@wilsonelser.com

---

[11] Plaintiff's argument also lacks logical force as it ignores the purpose of the *forum non conveniens* analysis. Removal simply placed this case in federal court. It did not address the substantive issue which is where (in what state) the claims should be adjudicated. Defendants always have the option (assuming the requirements for removal can be met) of having a federal court, rather than a state court, decide the question of forum (and even personal jurisdiction).

466320.3

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing pleading was filed electronically on this 7 day of March, 2008.

/s/ Daniel E. Tranen
Daniel E. Tranen
Geoffrey A. Belzer

466320.3