## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BARBARA R. KAPLAN,

Plaintiff,

v.

DAVIDSON & GRANNUM, LLP,
SANDRA D. GRANNUM & DAVID L.
BECKER

Defendant.

Case No. 07C 6668

JUDGE MAROVICH

MAGISTRATE JUDGE SCHENKIER

### DEFENDANTS' ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT AT LAW

NOW COME Defendants, DAVIDSON & GRANNUM, LLP, SANDRA D. GRANNUM & DAVID L. BECKER, by and through their attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP and for their Answer to Plaintiff's Verified Complaint at Law, state as follows:

### FACTUAL BACKGROUND

1.      Kaplan is a Registered Representative in the securities business and has been for more than thirty-five (35) years working for several major Wall Street powerhouse firms, all Members of the New York Stock Exchange, (hereinafter "NYSE"), including Drexel Burnham, Bear Stearns, UBS, CIBC Openheimer, (hereinafter "CIBC"), and Morgan Stanley, (hereinafter "Morgan").

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph One of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

2.      At Bears Stearns, Kaplan was Senior Managing Director for fourteen (14) years, at UBS she was Senior Vice-President for ten (10) years and at Morgan she was Senior Vice-President for four (4) years and member of the special and exclusive Chairman's Club.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph Two of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

502857.1



EXHIBIT
A

3.    Kaplan's gross commissions in 2002 were in excess of three million dollars, ($3,000,000.00), at Morgan and she was among the top twelve (12) producers in Private Client Services. She was respected and highly successful in the provincial LaSalle Street community of stock brokers in Chicago.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph Three of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

## THE 212 INVESTMENT GROUP MATTERS

4.    Kaplan contacted Becker in January 2005 and asked him to refer a securities attorney who was licensed in New York State to defend her in the Supreme Court of the State of New York, County of New York in an action entitled 212 Investment et al. v. Myron Kaplan, Barbara Kaplan et al., Supreme Court of the State of New York, County of New York, Index Number 603029/04, (hereinafter the "212 Supreme Court Case").

**ANSWER:    Defendants admit the allegations stated in Paragraph Four of Plaintiff's Complaint.**

5.    In the 212 Supreme Court Case, Kaplan was accused of facilitating the allocation of favorable trades for an account of her brother's rather than for the hedge fund managed by her brother. The allegations of wrongdoing were alleged to have occurred for a number of years, including the period November 1998 through April 1999, when Kaplan was employed as a Senior Vice-President at CIBC.

**ANSWER:    The allegations stated in the Complaint for *212 Investment et al. v. Myron Kaplan, Barbara Kaplan et al.*, Supreme Court of the State of New York, County of New York, Index Number 603029/04 speak for themselves.   To the extent that the allegations in Paragraph 5 of Plaintiff's Complaint are inconsistent with those allegations, they are denied.**

6.    At the time Kaplan was at CIBC, Becker was employed by CIBC as Head of Lawyers and First Assistant to the General Counsel, Mark E. Kaplan (no relation).

**ANSWER:    Defendants admit that Becker was employed by CIBC during a time-period that Plaintiff was also employed by CIBC and deny all remaining allegations stated in Paragraph Six of Plaintiff's Complaint.**

7.    In fact, while Kaplan and Becker were both employed by CIBC, Becker investigated and reported Kaplan to the NYSE Regulatory Division, for the very same allegations which were part of the 212 Supreme Curt Case.

**ANSWER:    Defendants deny all allegations stated in Paragraph Seven of Plaintiff's Complaint.**

8.    In fact, after conducting an internal investigation, it was Becker, positioned at CIBC who filed a NYSE Form Re-3 with the Regulatory Department of the NYSE against Kaplan in May 1999.

**ANSWER:    Defendants deny that all allegations stated in Paragraph 8 of Plaintiff's Complaint.**

9.    In order to become a stock broker, one must apply to a Broker-Dealer firm that is a member of the National Association of Securities Dealers, (hereinafter "NASD"). The applicant then submits a Form U-4 with the NASD that must be absolutely clean in order to be accepted by the NASD. Once the U-4 is approved, the applicant sponsored by a NASD firm, takes a Series Seven (7) examination among various other tests in order to qualify to become a registered representative. The broker first must get licensed in their home state and only after that my apply to any/all of the remaining forty-nine (49) states for additional licenses. A "Ding" or "Mark" on a Form U-4 can prevent any brokerage firm or State agency (acting sovereignly) in denying a license. The NYSE Form RE-3 is filed by NYSE member firm with the NYSE Regulatory Division. It charges the registered representative with regulatory wrongdoing and rule-breaking. This charge is then added to the broker's U-4 license and the U-4 is now "Marked." It is almost impossible to reverse the regulatory charges brought by the NYSE firm. The RE-3 Form invariably results in the broker being investigated, deposed, barred, suspended, fined, and destroys their career and reputation. "Heightened Supervision" is the dire consequences of a "Mark". The broker subsequently becomes "red flagged" for their remaining entire business life.

**ANSWER:    Defendants object to Paragraph 9 of Plaintiff's Complaint as violating Federal Rules of Civil Procedure 8 (a) and 8 (e).    To the extent that any answer is required to Paragraph 9, Defendants deny all allegations stated therein.**

10.    Incredibly, Becker was the person who filed the NYSE Form RE-3 against Kaplan incriminating Kaplan, then a NYSE Registered Representative at CIBC.

**ANSWER:    Defendants deny all allegations stated in Paragraph 10 of Plaintiff's Complaint.**

11.    Subsequently, Kaplan discovered that the NYSE RE-3 Form covered only eleven (11) days of trading in April 1999. NYSE member firms do not often file Form RE-3 filings because they result in triggering a NYSE investigation onto themselves. CIBC was subsequently fined; Kaplan's Branch Manager, Carl Chaleff and CIBC Sales Manager, Thomas Evans, were suspended and fined. Becker was reckless, destructive and dishonest. Becker himself was terminated from CIBC soon thereafter.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations in regards to what and when Plaintiff discovered anything in regards to the facts pled in Paragraph 11 of Plaintiff's Complaint and therefore deny same for want of**

personal knowledge. **Defendants deny all remaining allegations stated in Paragraph 11 of Plaintiff's Complaint.**

12.    This extraordinary filing NYSE Form RE-3 resulted in a NYSE inquiry and investigation (Case #HPD 03-115) and finally two (2) civil cases, first, the 212 Supreme Court Case and the second, a related arbitration. Becker caused Kaplan's career to end forever with the elite members of the NYSE after more then thirty (30) successful unblemished years of work in the securities industry. This was a lifetime sentence against Kaplan.

**ANSWER:    Defendants object to Paragraph 12 of Plaintiff's Complaint as violating Fed. R. of Civ. Pro. 8 (a) and (e). To the extent that any answer is required to Paragraph 12 of Plaintiff's Complaint, the defendants deny all allegations stated therein.**

13.    Instead of disclosing his obvious conflict of interest to Kaplan properly and truthfully by refusing to get involved with the 212 Supreme Court Case, Becker picked himself and his then firm, D&G to represent Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 13 of Plaintiff's Complaint.**

14.    Becker told Kaplan that he was the best attorney for her case because he was licensed in the State of New York and had extensive securities litigation and regulatory experience including previous work experience at the Securities and Exchange Commission ("SEC") and Prudential Securities among other brokerage houses. Becker immediately wanted to represent Kaplan and requested that the complaint in the 212 Supreme Court case be sent to him by overnight courier. Becker told Kaplan that she would not win this case (Case #603029/04) without his involvement and expertise.

**ANSWER:    Defendants deny all allegations stated in Paragraph 14 of Plaintiff's Complaint.**

15.    The Plaintiff, Kaplan executed D&G's Retainer Agreement on January 11, 2005 and secured it with a ten thousand dollar, ($10,000.00), fee. After Becker, an Associate at D&G, discussed the case (Case # 603029/04) with Grannum, a Partner, Becker still never disclosed his conflict of interest to Kaplan.

**ANSWER:    Defendants admit that Plaintiff executed a Retainer Agreement on January 11, 2005 and paid a $10,000 retainer. Defendants deny all remaining allegations stated in Paragraph 15 of Plaintiff's Complaint.**

16.    Kaplan began working at CIBC on November 17, 1998 and became licensed on January 31, 1999. Kaplan resigned from CIBC on April 16, 1999 and joined Morgan on April 19, 1999. The filing of the NYSE Re-3 Form by Becker caused Kaplan to be unable to get licensed at Morgan until September 1999.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations in regards to Plaintiff's employment history stated in Paragraph 16 of Plaintiff's Complaint and therefore deny same for want of knowledge. Defendants deny all remaining allegations stated in Paragraph 16 of Plaintiff's Complaint.**

17.    Because of Kaplan's "Marked" Form U-4, she was denied employment by the prestigious firms of Wall Street including: Goldman Sachs, Merrill Lynch, Citicorp Smith Barney, UBS, Lehman, Credit Suisse, Wachovia, Fidelity Investments, Royal Bank of Canada, Deutschebank, Stifel Nicholas and Robert Baird. World class banks such as Barclays Bank and Bank of America refused her. In addition regional and Chicago based NYSE members Mesirow Financial, Howe Barnes, William Blair, Rothschild Investment Corp., and David A. Noyes Kaplan's ruined NASD license began in April 1999 and is still effective today.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations regarding specific firms Plaintiff sought employment with and the rationale for those firms' alleged decision not to hire her, and therefore deny same for want of knowledge. Defendants deny all further allegations stated in Paragraph 17 of Plaintiff's Complaint for want of personal knowledge.**

18.    This NYSE Re-3 Form resulted in Kaplan having to plead out her case in front of NYSE Regulatory Department (Case #HPD 03-115) and having being barred, suspended for one (1) year and fined one hundred thousand dollars ($100,000.00), in 2003. Becker put Kaplan out of business. In July 2003 Case #HPD 03-115 appeared in "The Wall Street Journal" and on the Internet which forever defamed and further damaged Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 18 of Plaintiff's Complaint.**

19.    Kaplan did not discover that Becker was the investigator and the only signatory on the NYSE RE-3 Form until September 11, 2006 during testimony at an Arbitration hearing before the American Arbitration Association entitled 212 Investment Corporation v. Myron Kaplan, Barbara Kaplan et al., Case No. 13-180-Y-00862-05) (hereinafter "212 Arbitration") hearing in New York City.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph 19 regarding when Plaintiff "discovered" the alleged facts pled in Paragraph 19, and therefore deny same for want of knowledge. Defendants deny all further allegations stated in Paragraph 19 of Plaintiff's Complaint.**

20.    Becker disregarded the cardinal rule of conflict of interest; he never mentioned nor did he provide any written document to Kaplan that would fully disclose his significant conflict of interest. Thus Becker compromised the defense of the 212 Supreme Court Case and 212 Arbitration which had incredible claims of over one hundred million dollars, ($100,000,000.00), because he was greedy and violated one of the cornerstone principles of the legal profession.

**ANSWER:    Defendants deny all allegations stated in Paragraph 20 of Plaintiff's Complaint.**

21.    The 212 Arbitration was commenced in April, 2005, which was after Kaplan had retained Becker and D&G to handle the 212 Supreme Court Case, which was January, 2005. Becker prepared and filed a long and unnecessarily detailed Answer to the 212 Arbitration when all that was required was a simple denial. This greatly ruined the case for Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 21 of Plaintiff's Complaint.**

22.    This matter was also to be held in New York City and Kaplan elected to continue retaining Grannum on this case, after Becker had left D&G in late August 2005. This case had now evolved into the AAA Arbitration Case (Case # 13-180-Y0086205).

**ANSWER:    Defendants admit all allegations stated in Paragraph 22 of Plaintiff's Complaint.**

23.    This case (Case #13-180-Y-0086205) went through extensive discovery for two (2) years and during the course of Attorney-Client privilege conversations, Grannum revealed privileged information to the Plaintiff's attorneys, Quinn Emmanuel Urquhart Oliver & Hedges LLP, (hereinafter "Quinn.")

**ANSWER:    Defendants deny all allegations stated in Paragraph 23 of Plaintiff's Complaint.**

24.    This violation of the sacrosanct attorney-list relationship and a cardinal rule of the legal profession resulted in the Plaintiff's counsel, Quinn calling three (3) witnesses (Ken Witry, Sheilah McFadden and Roseanne Crimo) to testify in May 2006 in New York City. Quinn would have no knowledge and information of the existence of these witnesses but for Grannum's betrayal of her client, Kaplan. In addition, the D&G Firm engaged in unauthorized settlement discussions and provided confidential information to Quinn. All of their nefarious actions were an unauthorized violation of the attorney-client privilege.

**ANSWER:    Defendants deny all allegations stated in Paragraph 24 of Plaintiff's Complaint.**

25.    This violation resulted in Kaplan losing the 212 Arbitration and having a judgment against her in excess of seventy million dollars ($70,000,000.00), plus interest which totally and irreversibly devastated Kaplan.

**ANSWER:    In answer to Paragraph 25 of Plaintiff's Complaint, Defendants admit that Kaplan lost the 212 Arbitration and had a judgment assessed against her in excess of $70,000,000 plus interest. Further answering, defendants deny all remaining allegations stated in Paragraph 25 of Plaintiff's Complaint.**

6

26.    This Judgment is currently outstanding and if it is not settled it will bankrupt Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 26 of Plaintiff's Complaint.**

## THE GRIMES MATTER

27.    In July 2003 one of Kaplan's clients, Gregory Grimes, (hereinafter "Grimes"), filed a Customer Complaint (NASD Arbitration Case 04-04804) against Kaplan and Morgan and with the Regulatory Department (Case # E8A040452) of the NASD.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph 27 of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

28.    Such complaint (Case #E8A040452) was fully dismissed by the NASD regulatory staff with no action taken against Kaplan and Morgan after fully investigating the claims of Grimes.

**ANSWER:    Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph 28 of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

29.    Subsequent to the NASD regulatory complaint (Case #E8A040452), Grimes also filed a NASD Arbitration claim (Arbitration Case #04-04804) against Kaplan and Morgan with a claim of twenty-three thousand dollars, ($23,000.00), in compensatory damages.

**ANSWER:    The allegations stated in Paragraph 29 of Plaintiff's Complaint as the NASD Arbitration Claim filed by Grimes speaks for itself regarding its contents.  To the extent that the allegations in Paragraph 29 of Plaintiff's Complaint are inconsistent with those allegations, they are denied.**

30.    This matter (Case #04-04804) was filed in the State of New York and such hearings were to be held in New York City at the direction of the NASD's New York office.

**ANSWER:    Defendants admit all allegations stated in Paragraph 30 of Plaintiff's Complaint.**

31.    Kaplan's Chicago counsel, Rzepczyski, had filed the Answer to the charges and also completed discovery on behalf of Kaplan in the Spring of 2005.  Kaplan's Chicago counsel, Rzepczynski had filed the Answer beginning July 2003.

**ANSWER:    In answer to Paragraph 31 of Plaintiff's Complaint, defendants deny that all discovery on behalf of Kaplan was completed in Spring, 2005.  Further answering, Defendants admit all remaining allegations stated in Paragraph 31.**

7

502857.1

32.     Because this Arbitration was to be conducted in New York City, Kaplan and her Chicago counsel elected to retain local counsel to litigate this matter in November of 2005.

**ANSWER:     Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph 32 of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

33.     On March 16, 2005, Becker flew to Chicago on his initiative and met with Kaplan and with her local counsel, Rzepczynski.     Becker reviewed the filings and gave his recommendations on the NASD Arbitration (Case #04-04804).

**ANSWER:     In answer to Paragraph 33 of Plaintiff's Complaint, Defendants deny that Becker flew to Chicago on March 16, 2005 on his own initiative and for the sole purposes of meeting with Plaintiff and Rzepczynski.  Defendants admit all other allegations stated in Paragraph 33 of Plaintiff's Complaint.**

34.     Prior to the Grimes hearing date of November 15, 2005, Becker suddenly left the firm of D&G in late August 2005 and took a position in-house out of the private sector.

**ANSWER:     In answer to Paragraph 34 of Plaintiff's Complaint, Defendants deny that Becker suddenly left the firm of D&G in late-August, 2005.  Further answering, Defendants admit the remaining allegations stated in Paragraph 34 of Plaintiff's Complaint.**

35.     With the hearing date quickly approaching, Becker recommended a named Partner in his firm, Grannum, to replace him in litigating the NASD Arbitration (Case #04-04804).

**ANSWER:     In answer to Paragraph 35 of Plaintiff's Complaint, Defendants deny the hearing date was "quickly approaching" and admit that Becker recommended Grannum (along with other qualified counsel) to represent Plaintiff in the Grimes arbitration case.**

36.     Grannum met with Kaplan in Chicago in November 2005 but refused to include local counsel, Rzepczynski, in the meeting.

**ANSWER:     In answer to Paragraph 36 of Plaintiff's Complaint, Defendants admit that Grannum met with Kaplan in Chicago in November, 2005.  Defendants deny all further allegations stated in Paragraph 36 of Plaintiff's Complaint.**

37.     Grannum and Becker unnecessarily billed vast amounts of time and expenses on the Grimes matter (Case #04-04804) even though it was already investigated and dismissed by the NASD regulatory staff (Case #E8A040452) in early 2005.

**ANSWER:     Defendants deny all allegations stated in Paragraph 37 of Plaintiff's Complaint.**

38.    One example is Grannum's billing for lunch at the Harvard Club in New York City on November 14, 2005 for two thousand two hundred dollars ($2,200.00), despite the fact that virtually no business was discussed.

**ANSWER:    In answer to Paragraph 38 of Plaintiff's Complaint, Defendants admit that they met with Plaintiff on November 14, 2005 at the Harvard Club in New York in preparation for the NASD Arbitration of the Grimes matter.    Further answering, defendants deny all further allegations stated in Paragraph 38 of Plaintiff's Complaint.**

39.    On November 15 and 16, 2005, Grannum attended the one and one-half (1 ½) day NASD Arbitration (Case #04-04804) in New York City.    In her closing statements she did not bother to plead and give any details for the recovery of legal fees and expenses because the Grimes case was indeed a frivolous lawsuit without merit.    Kaplan was billed in excess of thirty-eight thousand dollars, ($38,000.00), defending herself in a case that was already dismissed by the NASD Regulatory Department (Case #E8A040452) in early 2005.    This was in addition to the thirty-two thousand dollars, ($32,000.00), already paid to Rzepczynski from July 2003 to November 2005.    The vast majority of the work was dismissing the NASD Regulatory (Case #E8A040452) action and was key in the expungement on Kaplan's license.    This positive Regulatory decision paved the way for Kaplan's winning the NASD Customer Arbitration (Case #04-04804).    It was the two (2) year efforts of Rzepczynski's discovery that transcended the NASD Regulatory Claim (Case #E8A040452).    All that was left for Grannum was to attend a one and one-half (1 ½) day hearing and to prep herself for the NASD Arbitration hearing (Case #04-04804).

**ANSWER:    Defendants object to Paragraph 39 of Plaintiff's Complaint as violating Federal Rules of Civil Procedure 8 (a) and 8 (e).    To the extent that any answer is required to Paragraph 39, Defendants admit Grannum attended the NASD Arbitration of Case #04-04804 in New York City; deny that Granum did not ask for legal fees and/or expenses; deny that the Grimes case was frivolous and without merit; admit that they billed Plaintiff in excess of $38,000 for services rendered on the case; do not have sufficient personal knowledge to admit or deny the amount of fees billed to Plaintiff by Rzepczynski and therefore deny same for want of knowledge; and deny all remaining allegations stated in Paragraph 39 of Plaintiff's Complaint.**

40.    On December 5, 2005, the NASD Arbitration panel ruled in Kaplan's favor and dismissed the case (Case #04-04804) by unanimous decision, but Kaplan was not awarded any legal fees or expenses as Grannum never even made the petition for such action.

**ANSWER:    In answer to Paragraph 40 of Plaintiff's Complaint, defendants admit that the NASD arbitration panel ruled in Kaplan's favor in Case #04-04804 by unanimous decision; admit that Kaplan was not awarded any legal fees or expenses; and deny the remaining allegations stated in Paragraph 40 of Plaintiff's Complaint.**

41.    Upon issuing the Dismissal Order, it was Grannum's total and complete responsibility to have Kaplan's U-4 amended reflecting the dismissal of the Customer Complaint Arbitration (Case #04-04804) and the detailed facts surrounding this case.    A clean NASD Form

9

U-4 is required in order for a Registered Representative to get a NASD license. Exact answers are mandatory on the U-4 Disclosure Form.

**ANSWER:    Defendants deny all allegations stated in Paragraph 41 of Plaintiff's Complaint.**

42.    Grannum was recommended to Kaplan because Grannum was a securities litigation attorney for more then thirteen (13) years and is a Harvard Law School Graduate. Grannum had worked in-house at UBS, a major Wall Street brokerage firm, for more than ten (10) years. Grannum was Senior Vice-President and Senior Associate General Counsel at UBS. Currently, Grannum serves on the Securities Arbitration Committee of the American Bar Association.

**ANSWER:    In answer to Paragraph 43 of Plaintiff's Complaint, Defendants deny that Grannum worked in-house for UBS for more than 10 years; do not have sufficient personal knowledge to admit or deny why Grannum was recommended to Kaplan and therefore deny same for want of personal knowledge; and admit the remaining allegations stated therein.**

43.    Only while seeking employment between 2005 through September 2007 did Kaplan discover that the crucial Form U-4 amendment was incorrectly filed by Grannum. Grannum stated Kaplan paid fifteen thousand dollars, ($15,000.00), to Grimes as settlement for his Customer Complaint (NASD Case #04-04804).

**ANSWER:    In answer to Paragraph 43 of Plaintiff's Complaint, Defendants do not have sufficient personal knowledge to admit or deny any allegations regarding what Plaintiff "discovered" and/or when she made any alleged discoveries, and therefore deny same for want of personal knowledge.    Further answering, Defendants deny all remaining allegations stated in Paragraph 43 of Plaintiff's Complaint.**

44.    This was in error since it was Morgan, one of the co-defendants, who had paid the fifteen thousand dollars, ($15,000.00), to Grimes as nuisance only, not Kaplan. Kaplan paid nothing pursuant to the NASD Arbitration Order.

**ANSWER:    Defendants deny all allegations stated in Paragraph 44 of Plaintiff's Complaint.**

45.    This error by Grannum has resulted in Kaplan not being able to secure employment within the brokerage community for the past two (2) years and has caused Kaplan a substantial loss of income to her personally. The following nine (9) firms based on their review of Kaplan's amended Form U-4 that refused to hire her are: (1) National Securities; (2) U.S. Fiduciary; (3) Brewer Investments; (4) Chicago Investment Group; (5) Bertel Fisher; (6) Gunn Ellis; (7) Dawson James; (8) Raymond James;' and (9) LaSalle Street Securities.

**ANSWER:    In answer to Paragraph 45 of Plaintiff's Complaint, defendants do not have sufficient personal knowledge to admit or deny Plaintiff's allegations regarding various**

entities that allegedly failed to hire her or those entities alleged rationales for same and therefore deny those allegations for want of personal knowledge.   Further answering, Defendants deny all remaining allegations stated in Paragraph 45 of Plaintiff's Complaint.

46.     On February 25, 2006 Kaplan terminated Grannum and the law firm of D&G by FAX for the reasons as follows: (1) Grannum's excessive and fictitious billing; (2) Becker's excessive and fictitious bills; (3) the unethical demands on Kaplan to take the Fifth Amendment forth-three (43) times via an Affidavit even though this was not a criminal case and the criminal statue had in fact expired in the 212 Investment case (Case #13-180-Y-00862-05); (4) Grannum's failure with the Illinois Department of Employment Security, (hereinafter "IDES"), claim (Case #05-005264 & 05-005336); and (5) Grannum's failure in the Grimes Case (Case # 04-04804) with respect to the awarding of any expenses and fees to Kaplan).

ANSWER:   In answer to Paragraph 46 of Plaintiff's Complaint, defendants admit that Plaintiff terminated their services on or about February 25, 2006 via facsimile. Further answering, Defendants deny all remaining allegations stated in Paragraph 46 of Plaintiff's Complaint.

47.     Upon termination Grannum presented a final billing for services even though Grannum was the cause of Kaplan losing the 212 Arbitration (Case #13-180-Y-00862-05) and the 2005 IDES Claims (Case #05-005254 & 05-005336).

ANSWER:   In answer to Paragraph 47 of Plaintiff's Complaint, Defendants admit that Grannum presented a final billing for services rendered to the Plaintiff and deny all remaining allegations stated in Paragraph 47 of Plaintiff's Complaint.

48.     It is unknown what additional privileged information Becker may have revealed to the Partners of D&G or to the opposing counsel, Quinn, based on his powerful position at CIBC.  However, it is known that Becker had viciously contacted Quinn several times during 2005 without Kaplan's permission and in doing so violated the attorney-client privilege.

ANSWER:   Defendants deny all allegations stated in Paragraph 48 of Plaintiff's Complaint.

49.     Upon further investigation of Grannum's actions, Kaplan became aware that Grannum previously had betrayed her client's trust in a matter in California in 2003, Terrance Blanchard vs. UBS-PaineWebber, Scott Flanagan and Sandra Grannum, (Case #03-CC-06087), which resulted in her termination as General Counsel from UBS and a settlement for the client in the amount of two hundred sixty-five thousand dollars ($265,000.00).

ANSWER:   Defendants deny all allegations stated in Paragraph 49 of Plaintiff's Complaint.

50.     Grannum was Senior Associate General Counsel, Employment Division at UBS when she "Mary Cartered" her assigned client, Terrance Blanchard, in the State of California (Case #03-CC-06087).  Grannum betrayed her client and employer, UBS, in a devious manner.

**ANSWER:   In answer to Paragraph 50 of Plaintiff's Complaint, Defendants admit that Grannum held the title of Senior Associated General Counsel at UBS and deny all remaining allegations stated in Paragraph 50 of Plaintiff's Complaint.**

51.     Grannum repeated the same cruel and unusual betrayal and "Mary Cartered" Kaplan in 2005 and 2006 in the significant 212 Investment Cases both in the State Court (Case #603029/04) and in the AAA Arbitration Case (Case #13-180-Y-00862-05).

**ANSWER:   Defendants deny all allegations stated in Paragraph 51 of Plaintiff's Complaint.**

52.     It is apparent that Grannum has a history of "Selling out" and unethically betraying the confidentiality of the sacrosanct attorney-client privilege.  Grannum at all times acted without consent, knowledge and permission of Kaplan.

**ANSWER:   Defendants deny all allegations stated in Paragraph 52 of Plaintiff's Complaint.**

### WUNDERLICH MATTER

53.     Grannum again, in another legal matter involving an employer of Kaplan, egregiously betrayed Kaplan. In Chicago the Equal Employment Opportunity Commission, ("EEOC"), had met with Kaplan during two (2) days in October 2005 and informed her that there was no evidence of discrimination during her employment at Wunderlich Securities, (hereinafter "Wunderlich"), yet Grannum systemically filed a frivolous lawsuit (Case #06-C-0200) against Wunderlich.  Grannum therefore subjected Kaplan to liability for having to pay Wunderlich's attorneys' fees (the Law Firm of McGuire Woods LLP) and filing fees.

**ANSWER:   Defendants deny all allegations stated in Paragraph 53 of Plaintiff's Complaint.**

54.     Kaplan had to be requested by Chicago counsel, Rzepczynski, in order to dismiss Kaplan from the court case (Case No. 06-C-0200) in March 2006.

**ANSWER:   Defendants deny all allegations stated in Paragraph 54 of Plaintiff's Complaint.**

55.     In October 2005, Grannum never attempted to contact the Chief Compliance Officer at Wunderlich to amend Kaplan's Form U-4 which erroneously stated Kaplan was fired when actually Kaplan had quit her employment at Wunderlich on September 24, 2005.

**ANSWER:   Defendants deny all allegations stated in Paragraph 55 of Plaintiff's Complaint.**

56.     Wunderlich marked her U-4 claiming she had "no business" yet her W-2 for 2005 from Wunderlich was one hundred and forty-five thousand dollars, ($145,000.00), in earned income. Grannum also neglected to have this fact corrected on the Form U-4.

**ANSWER:     Defendants are without sufficient personal knowledge to admit or deny the allegations stated in Paragraph 56 of Plaintiff's Complaint and therefore deny same for want of personal knowledge.**

57.     Furthermore, Grannum filed a complaint in late December 2005 to the IDES in Chicago (Case #05-005264 & 05-005336) asking for five hundred fifty-five thousand dollars, ($555,000.00), in compensation and damages for Kaplan from Wunderlich. This claim should have been for around eighty thousand dollars ($80,000.00).

**ANSWER:     Defendants deny all allegations stated in Paragraph 57 of Plaintiff's Complaint.**

58.     This case was dismissed by the IDES (Case #05-005264 & 05-005336) on February 13, 2006 due to inconsistent statements made by Grannum. The IDES, via Illinois State Administrative Judge Claudia Manley, informed Kaplan that no appeal was available.

**ANSWER:     In answer to Paragraph 58 of Plaintiff's Complaint, Defendants admit Plaintiff's case was dismissed by the IDES on February 13, 2006 without possible appeal, but deny all of Plaintiff's remaining allegations stated in Paragraph 58 of Plaintiff's Complaint.**

59.     Kaplan therefore lost eighty thousand dollars, ($80,000.00), in actual earned income that was due to her from Wunderlich.

**ANSWER:     Defendants deny all allegations stated in Paragraph 59 of Plaintiff's Complaint.**

60.     Kaplan notified Grannum that her case was dismissed on February 16, 2006. Grannum said she could not remember the cases the IDES (Cases 05-005264 & 05-005336).

**ANSWER:     Defendants deny all allegations stated in Paragraph 60 of Plaintiff's Complaint.**


## FIRST COUNT
## BREACH OF CONTRACT

61.     Kaplan repeats the allegations stated above in paragraphs 1-60 as set forth herein.

**ANSWER:     In answer to Paragraph 61 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

62.    Kaplan contracted Becker, Grannum and the D&G law firm to advocate on her behalf with relation to the 212 Investment Cases (New York State Court Case #603029/04 and AAA Arbitration Case #13-180-Y-00862-05), the NASD Grimes arbitration matter (Case #04-048904) and the (EEOC case #06-C-0200) against Wunderlich.

**ANSWER:    In answer to the allegations stated in Paragraph 62 of Plaintiff's Complaint, Defendants admit Plaintiff contracted with them to advocate on her behalf in regards to the 212 Investment Cases and the NASD Grimes arbitration matter.  Defendants deny the remaining allegations stated in Paragraph 62 of Plaintiff's Complaint.**

63.    During such time each of the Defendants over-billed Kaplan for work that was not performed and/or work that was not necessary.

**ANSWER:    Defendants deny all allegations stated in Paragraph 63 of Plaintiff's Complaint.**

64.    This over-billing resulted in a lawsuit against Kaplan by D&G and caused additional expenses and legal fees in defending Kaplan against the billing claims.

**ANSWER:    Defendants deny all allegations stated in Paragraph 64 of Plaintiff's Complaint.**

65.    This Breach of Contract has caused disgorgement in the amount of fifty-eight thousand dollars ($58,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 65 of Plaintiff's Complaint.**

## SECOND COUNT
## LEGAL MALPRACTICE

66.    Kaplan repeats the allegations stated above in paragraphs 1-60 as set forth herein.

**ANSWER:    In answer to Paragraph 66 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

67.    It is apparent that Becker while an Associate at D&G retained Kaplan as a client while fully being aware that a conflict of interest existed based on his prior actions.

**ANSWER:    Defendants deny all allegations stated in Paragraph 67 of Plaintiff's Complaint.**

68.    At no time was this conflict disclosed to Kaplan in any format nor was a waiver ever obtained from Kaplan.

502857.1

**ANSWER:    Defendants deny all allegations stated in Paragraph 68 of Plaintiff's Complaint.**

69.    This conflict related to the 212 Investment cases (Case #603029/04 and Case #13-180-Y-00862-05) and violated the attorney-client relationship.

**ANSWER:    Defendants deny all allegations stated in Paragraph 69 of Plaintiff's Complaint.**

70.    Kaplan only became aware of this conflict near the end of the 212 Investment Arbitration and would never have retained Becker or D&G as her counsel if such a conflict had been disclosed to Kaplan at the onset.

**ANSWER:    Defendants deny all allegations stated in Paragraph 70 of Plaintiff's Complaint.**

71.    Ultimately, Kaplan lost the 212 Investment Arbitration and currently has a judgment against her in excess of seventy million dollars, ($70,000,000.00), plus interest.

**ANSWER:    Defendants admit that Plaintiff lost the 212 Investment Arbitration but deny all remaining allegations stated in Paragraph 71 of Plaintiff's Complaint.**

72.    At all the times, all of the Defendants had a duty to disclose this conflict to Kaplan, and because of this omission to disclose the conflict, Kaplan lost the opportunity to obtain counsel who could fully and properly represent Kaplan's interests in the 212 Investment Arbitration.

**ANSWER:    Defendants deny all allegations stated in Paragraph 72 of Plaintiff's Complaint.**

73.    Therefore this conflict has caused Kaplan damages in the amount in excess of seventy million dollars, ($70,000,000.00), including the disgorgement of fees paid to D&G in the amount of fifty-eight thousand dollars ($58,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 73 of Plaintiff's Complaint.**

## THIRD COUNT
## BREACH OF FIDUCARY DUTY

74.    Kaplan repeats the allegations stated above in paragraphs 1-60 as set forth herein.

**ANSWER:    In answer to Paragraph 74 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

75.    During Grannum's representation of Kaplan in the 212 Investment case (Case #13-180-Y-00862-05) Grannum betrayed Kaplan's trust by revealing confidential information surrounding the 212 Investment case (Case #13-180-Y-00862-05) to Quinn.

**ANSWER:    Defendants deny all allegations stated in Paragraph 75 of Plaintiff's Complaint.**

76.    Without approval from Kaplan, Grannum revealed such information to opposing counsel which was the direct result and the proximate cause in Kaplan losing the 212 Investment case (Case #13-180-Y-00862-05) and caused a judgment against Kaplan for seventy million dollars ($70,000,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 76 of Plaintiff's Complaint.**

77.    As a direct result of the failure of the Defendant to perform its professional duties to Kaplan, to honor their commitment to her as her attorneys, and to perform and exercise reasonable care and diligence on behalf of Kaplan, Kaplan has sustained financial loss, anguish, aggravation and mental suffering and has been the cause of expenses and monetary loss.

**ANSWER:    Defendants deny all allegations stated in Paragraph 77 of Plaintiff's Complaint.**

78.    The failure of the Defendants to act fully and properly on behalf of Kaplan was due solely and completely due to their negligence, carelessness, fraud, indifference, and malpractice against Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 78 of Plaintiff's Complaint.**

79.    Therefore this violation of the attorney-client relationship has caused Kaplan damages in the amount in excess of seventy million dollars, ($70,000,000.00), including the disgorgement of fees paid to D&G in the amount of fifty-eight thousand dollars ($58,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 79 of Plaintiff's Complaint.**

**FOURTH COUNT**
**LEGAL MALPRACTICE**

80.    Kaplan repeats the allegations stated above in paragraphs 1-60 as set forth herein.

502857.1

**ANSWER:    In answer to Paragraph 80 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

81.    Kaplan retained Grannum with respect to labor issues, including back pay that Kaplan had with her former employer Wunderlich.

**ANSWER:    In answer to Paragraph 81 of Plaintiff's Complaint, Defendants admit that Plaintiff retained Grannum to represent her with regard to claims stated against Wunderlich, but all remaining allegations stated in Paragraph 81 of Plaintiff's Complaint.**

82.    Grannum filed both a Federal lawsuit against Wunderlich via an EEOC claim (Case #06-C-0200) and claims with IDES (Claims 05-005336).

**ANSWER:    In answer to Paragraph 82 of Plaintiff's Complaint, Defendants admit that a federal lawsuit was filed on Plaintiff's behalf against Wunderlich and deny all remaining allegations stated in Paragraph 82 of Plaintiff's Complaint.**

83.    Since the EEOC claim was filed the IDES fully dismissed Kaplan's claim and barred any appeal of the claims.

**ANSWER:    Defendants admit the allegations stated in Paragraph 83 of Plaintiff's Complaint.**

84.    Subsequently, the EEOC claim (Case #06-C-0200) was viewed as frivolous and dismissed out of fear of liability from the Defendant's counter claim for legal fees.

**ANSWER:    Defendants deny all allegations stated in Paragraph 84 of Plaintiff's Complaint.**

85.    As a direct result of the failure of Grannum and D&G to perform their professional duties to Kaplan, to honor its commitment to Kaplan as her attorneys, and to perform and exercise reasonable care and diligence on behalf of Kaplan, Kaplan has sustained financial loss, anguish, aggravation, and mental suffering and has been the cause of expenses and monetary loss.

**ANSWER:    Defendants deny all allegations stated in Paragraph 85 of Plaintiff's Complaint.**

86.    The failure of Grannum and D&G to act fully and properly on behalf of Kaplan was due solely and completely to their negligence, carelessness, fraud, indifference and malpractice without any action of Kaplan contributing thereto.

**ANSWER:    Defendants deny all allegations stated in Paragraph 86 of Plaintiff's Complaint.**

502857.1

87.    Both Grannum and D&G had a duty at all times to represent Kaplan fully, properly and completely, but failed to properly use its professional knowledge and/or failed to gain the requisite knowledge needed to adequately defend Kaplan.

**ANSWER:    Defendants admit that they had a duty at all times to represent Plaintiff fully, properly and completely for all matters within the scope of their representation. Further answering, Defendants deny all remaining allegations stated in Paragraph 87 of Plaintiff's Complaint.**

88.    This direct error by Grannum was the proximate cause which estopped Kaplan from pursing her claim for back wages and caused damages in the amount in excess of one hundred and twenty-five thousand dollars, ($125,000.00), in addition the disgorgement of fees paid to D&G in the amount of fifty-eight thousand dollars ($58,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 88 of Plaintiff's Complaint.**

## FIFTH COUNT
## LEGAL MALPRACTICE

89.    Kaplan repeats the allegations stated in paragraph 1-60 as set forth herein.

**ANSWER:    In answer to Paragraph 89 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

90.    Upon the NASD issuing the final Order in the Grimes Case (Case #04-04804), Grannum assured Kaplan that Grannum would amend her NASD Form U-4 reflecting that the Customer Complaint was dismissed.

**ANSWER:    Defendants deny all allegations stated in Paragraph 90 of Plaintiff's Complaint.**

91.    This action should have been done in December 2005 and would have removed a "Mark" against Kaplan's NASD License.

**ANSWER:    Defendants deny all allegations stated in Paragraph 91 of Plaintiff's Complaint.**

92.    Apparently, Grannum instead amended Kaplan's NASD Form U-4 reflecting that Kaplan settled this claim by paying Grimes fifteen thousand dollars, ($15,000.00), when it was Morgan who had settled this issue with Grimes by paying Grimes fifteen thousand dollars ($15,000.00)

**ANSWER:    Defendants deny all allegations stated in Paragraph 92 of Plaintiff's Complaint.**

18

93.    This error which was entered directly by Grannum showing a Customer Complaint against Kaplan was the proximate cause of why Kaplan was not to be hired by numerous brokerage firms, from December 2005 until September 2007, when the error was ultimately discovered and the NASD Form U-4 was corrected.

**ANSWER:    Defendants deny all allegations stated in Paragraph 93 of Plaintiff's Complaint.**

94.    As a direct result of the failure of Grannum and D&G to perform their professional duties to Kaplan, to honor their commitment to Kaplan as her attorneys, and to perform and exercise reasonable care and due diligence on behalf of Kaplan, Kaplan has sustained financial loss, anguish, aggravation and mental suffering and has been the cause of the expenses and monetary loss therefrom.

**ANSWER:    Defendants deny all allegations stated in Paragraph 94 of Plaintiff's Complaint.**

95.    The failure of Grannum and D&G to act fully and properly on behalf of Kaplan was due solely and completely to its negligence, carelessness, fraud, indifference and malpractice without any actions of the Kaplan contributing thereto.

**ANSWER:    Defendants deny all allegations stated in Paragraph 95 of Plaintiff's Complaint.**

96.    Both Grannum and D&G have a duty at all time to represent Kaplan, fully, properly and completely, but failed to properly use its professional knowledge and/or failed to gain the requisite knowledge needed to adequately represent Kaplan.

**ANSWER:    Defendants admit that they had a duty at all times to represent Kaplan fully, properly and completely for all matters within the scope of their representation. Further answering, defendants deny all remaining allegations stated in Paragraph 96 of Plaintiff's Complaint.**

97.    This error by Grannum resulted in damages of lost income in excess of two million dollars, ($2,000,000.00), including disgorgement of fees paid to D&G in the amount of fifty-eight thousand dollars ($58,000.00).

**ANSWER:    Defendants deny all allegations stated in Paragraph 97 of Plaintiff's Complaint.**

**SIXTH COUNT**
**BREACH OF NEW YORK STATE JUDICIARY LAW SECTION 487**

98.    Kaplan repeats the allegations stated above in paragraph 1-60 as set forth herein.

**ANSWER:    In answer to Paragraph 98 of Plaintiff's Complaint, Defendants restate each of their answers, denials and defenses set forth in Paragraphs 1-60 as if fully re-incorporated herein.**

99.    New York State Judiciary Law Section 487 provides, in relevant part, as follows: "An attorney....who: 1. I guilty of any deceit...or consents to any deceit...or consents to any deceit to any party...forfeits to the party injured treble damages to be recovered in a civil action.

**ANSWER:    Defendants deny all allegations stated in Paragraph 99 of Plaintiff's Complaint.**

100.    By failing to tell Kaplan of the obvious conflict of interest in the 212 Investment cases all Defendants deceived Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 100 of Plaintiff's Complaint.**

101.    By breaching the attorney-client privilege and informing the opposing counsel of confidential information which was the direct cause of the liability loss to Kaplan of the 212 Investment Arbitration.

**ANSWER:    Defendants deny all allegations stated in Paragraph 101 of Plaintiff's Complaint.**

102.    By engaging in unauthorized settlement discussions and providing confidential information to the opposing counsel which further caused harm to Kaplan in her defense during the 212 Investment Arbitration case.

**ANSWER:    Defendants deny all allegations stated in Paragraph 102 of Plaintiff's Complaint.**

103.    All the Defendants are in violation of New York State Judicial Law Section 487 and should forfeit treble damages to Kaplan as well be held responsible and liable for punitive damages to Kaplan.

**ANSWER:    Defendants deny all allegations stated in Paragraph 103 of Plaintiff's Complaint.**

## AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.    Plaintiff has failed to join all necessary and indispensable parties to this litigation.

502857.1

3.  Plaintiff's Complaint is more appropriately litigated in the United States District Court for the Southern District of New York.

4.  Some or all of the claims stated in Plaintiff's Complaint will be barred by the doctrine of *res judicata* should the Supreme Court of the State of New York issue a final decree in the case of *Davidson & Grannum, LLP v. Barbara Kaplan*, Supreme Court of the State of New York, County of New York, Part 10, Case Number 601276/06.

5.  Plaintiff's Complaint is barred by the appropriate statute of limitations for some or all of the allegations stated.

6.  Illinois' "First to File" rule as stated in *Martin v. Graybar Electric Co.* 266 F. 2d 202 (7th Cir. 1959) applies and bars litigation of this action.

7.  This matter should be stayed or dismissed pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 47 L. Ed. 2d 483 (1976), in which the United States Supreme Court held that a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote "wise judicial administration."

8.  This matter should be dismissed pursuant to 735 ILCS 5/2-619.

9.  Defendants reserve the right to seek leave to Amend their Answer to assert any additional defenses as may become necessary during the course of discovery in this litigation.

WHEREFORE, having fully answered Plaintiff's Complaint as to all Counts Defendants DAVIDSON & GRANNUM, LLP, SANDRA D. GRANNUM & DAVID L. BECKER pray that all allegations stated against them in Plaintiff's Complaint be dismissed with prejudice with an award to the Defendants of their costs and fees in defending this action.

Respectfully submitted,

**DAVIDSON & GRANNUM, LLP;
SANDRA D. GRANNUM AND
DAVID L. BECKER**


By:  _/s/ Geoffrey A. Belzer_
One of their attorneys


Daniel E. Tranen
Geoffrey A. Belzer
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
Telephone:  (312) 704-0550
Facsimile:  (312) 704-1522
Daniel.Tranen@wilsonelser.com

22

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing pleading was filed electronically on this 16th day of July, 2008 and a copy of same was served upon:

**_Attorney for Plaintiff_**
Gregg M. Rzepczynski
Gregg M. Rzepczynski & Associates Ltd.
175 West Jackson Boulevard
Suite 1650
Chicago IL 60604

by: ☐ hand-delivery; ☐ facsimile; ☐ overnight mail, next day delivery; and/or ☑ depositing same in the US Mail at or before the hour of 5:00 p.m. this 16th day of July, 2008.


___ /s/ Geoffrey A. Belzer _____
Daniel E. Tranen
Geoffrey A. Belzer

502857.1