**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BARBARA R. KAPLAN,<br><br>                               Plaintiff,<br><br>      v.<br><br>DAVIDSON & GRANNUM, LLP,<br>SANDRA D. GRANNUM & DAVID L.<br>BECKER<br><br>                               Defendants. | Case No. 07C 6668<br><br>JUDGE MAROVICH<br><br>MAGISTRATE JUDGE SCHENKIER |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE ANSWER *INSTANTER*

**I.     INTRODUCTION**

This legal malpractice action arises from defendants Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker's (collectively "D&G") representation of Plaintiff Barbara R. Kaplan ("Kaplan"). This representation took place almost entirely in the State of New York, by New York lawyers, before New York Courts and New York arbitration panels, against New York lawyers, applying New York law and involving New York subject-matter and witnesses that lived or worked in the New York area. There can be no question that New York has an interest in a legal malpractice claim involving its lawyers. Illinois, on the other hand, has little or no interest in this dispute. Accordingly, this case is more appropriately litigated in New York, not Illinois. Transfer is appropriate for the convenience of parties and witnesses as well as in the interests of justice.

1

## II.    BACKGROUND FACTS

As previously briefed by the parties, the seeds from which this matter arises were planted many years ago when an investigation allegedly arose regarding Plaintiff's improper trading practices on the New York Stock Exchange ("NYSE").

Plaintiff Barbara Kaplan was employed for more than 35 years for several major Wall Street brokerage firms who were members of the NYSE, including Drexel Burnham, Bear Stearns, UBS, CIBC Oppenheimer ("CIBC") and Morgan Stanley. See Exhibit 1, *Complaint* ¶ 1.

Plaintiff herself alleges that while she was employed by CIBC, CIBC investigated and reported her to the NYSE Regulatory Division based upon allegations that Ms. Kaplan improperly facilitated many transactions that benefited accounts owned by her brother, Myron Kaplan, to the detriment of accounts owned by a hedge fund in which Mr. Kaplan was a general partner ("partnership"). See *Complaint* ¶ 5, 11-12; see also Exhibit 2, *Judgment Entry and Opinion* in Supreme Court State of New York, County of New York, Part 49 Case No. 603029/04 ("212 Case").

Plaintiff alleges Becker filed documents with the NYSE that led the NYSE to launch an investigation into the subject matter of the CIBC investigation. See *Complaint* ¶ 10-12. The NYSE investigated whether Ms. Kaplan, at her brother's direction, entered trades without account numbers, and then allocated those trades after their execution in a way that Mr. Kaplan's accounts received better execution prices than the partnership. Further, the NYSE investigated whether Ms. Kaplan had reallocated certain securities to the partnership from Mr. Kaplan's account after Mr. Kaplan determined them to be "loser" trades. See Exhibit 2.

On June 12, 2003, the NYSE determined that Kaplan had effected improper post-execution allocation on approximately 373 occasions between November, 1998 and April, 1999. The NYSE censured Kaplan, suspended her from the securities industry for one year and fined her $100,000. See Exhibit 2.

The partnership then filed an action in New York against Myron Kaplan and the Plaintiff in an action entitled *212 Investment et al. v. Myron Kaplan, Barbara Kaplan*, et al. See *Complaint* ¶ 12, see also Exhibit 3, Award of Arbitrators. Defendants were one of several law firms that represented Kaplan in that litigation. See Exhibit 4, ¶ Affidavit of Sandra Grannum.

On February 25, 2006 before the arbitration case was completed, Kaplan terminated D&G's representation of her. See *Complaint* ¶ 46. On January 29, 2007, an arbitration panel hearing the 212 Case issued an opinion finding that both Ms. Kaplan and Mr. Kaplan were liable for misconduct with respect to the hedge fund. See Exhibit 3. The Kaplans appealed to the trial court and, ultimately, on July 18, 2007, the New York court hearing the 212 case found the defendants, including Kaplan, liable for improper trading benefits and fraud. See Exhibit 2.

The Court ordered the defendants to pay the following amounts:

$16,336,288 for the wrongful allocation of trades;
$35,041,131 for the return of Myron Kaplan's performance fees;
$4,199,503.00 for return of Barbara Kaplan's commission fees;
$16,336,288.00 in punitive damages;
$3,055,000 in attorney fees and disbursements;
$1,572,700 to a respondent in arbitration for attorney fees and costs;
$220,169 for arbitration costs.

See Exhibit 2.

Plaintiff initiated this action in the Cook County Circuit Court on November 1, 2007. See *Complaint*.[1]  K&G removed the case to this Court based upon diversity grounds on November 28, 2007. See Docket.  K&G now moves the Court to transfer proceedings to the United States District Court for the Southern District of New York pursuant to 28 USCS § 1404.

## III.    LAW AND ARGUMENT

### A.    28 USC § 1404 GENERALLY

28 USC § 1404 states in relevant part:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

> (b) Upon motion, consent or stipulation of all parties, any action, suit or

---

[1] Plaintiff also retained D&G to represent her in two other actions.  Plaintiff retained D&G to defend her in an arbitration claim brought by a former client, Gregory Grimes, in New York.  Mr. Grimes alleged Kaplan was liable to him under theories of negligence, unauthorized trading and breach of fiduciary duty and Kaplan filed a counter-claim. See Exhibit 5, Award NASD Dispute Resolution.  Ultimately, the arbitration panel deciding the *Grimes* matter dismissed both the claim and the counter-claim but Plaintiff alleges D&G overcharged her for their representation of the Grimes matter and failed to recoup her attorney fees and costs, See *Complaint* ¶ 37-40, See Exhibit 5.

Plaintiff also retained D&G to represent her in a discrimination action filed in Illinois against Kaplan's former employer, Wunderlich Securities. See *Complaint* ¶ 53.  Prior to D&G's involvement, Kaplan had filed a *pro se* EEOC claim against Wunderlich alleging discrimination based upon her age, gender, religious beliefs and disabilities.  The EEOC dismissed the case in October, 2005 without prejudice to Kaplan's ability to bring suit in a civil court. See Exhibit 6, *Complaint* in *Kaplan v. Wunderlich Securities*.

In January, 2006, Kaplan asked D&G to prosecute the matter on her behalf.  Because D&G was not admitted in Illinois, D&G worked with Kaplan's attorney in the present matter, who filed the action in Chicago in January, 2006. See Exhibit 6. D&G was terminated by the Plaintiff the following month.  Accordingly, they did nothing to help prosecute this case on behalf of Kaplan.  The lawsuit was dismissed and Plaintiff alleges D&G is liable to her because they filed a frivolous lawsuit on her behalf, subjecting her to a payment of attorney fees.  See *Complaint*, ¶ 53.

Given the substantial amount of damages alleged by the Plaintiff based upon the millions of dollars Kaplan was found liable for in the 212 Case, it is clear that the focus of Plaintiff's *Complaint* against D&G relates to the 212 Case.

4

proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

28 USC. § 1404.

Transfer under 28 USCS § 1404 is appropriate when the moving party demonstrates that: (1) venue is proper in both the transferrer and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Publ'ns Int'l, Ltd. v. HDA, Inc.*, 2007 U.S. Dist. LEXIS 29649, 4-5 (N.D. Ill. 2007) citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986). The moving party, must show that the "transferee forum is clearly more convenient" than the transferrer forum. *Id.* citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The movant must also show that a transfer will promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. *Id.* citing *Black v. Mitsubishi Motors Credit of Am.*, 1994 U.S. Dist. LEXIS 11158 (N.D. Ill. 1994).

In regards to the first requirement for transfer, the above recitation of facts demonstrates that because the events giving rise to suit occurred in New York County, New York (D&G's representation of Kaplan in New York-based litigation, See Exhibits 2, 3 and 5); and because the parties are of diverse citizenship, Plaintiff could have brought this action in the United States District Court for the Southern District of New York Further, the Court has already determined that venue could be proper in this Court, See *Judgment Entry* of July 1, 2008. The only issues remaining for the Court's

consideration are whether transfer would be convenient for the parties and witnesses; and whether justice would be served by transferring this matter to New York.

**B.    TRANSFER IS APPROPRIATE UNDER 28 USC § 1404**

In *Coffey v. Van Doren Iron Works*, 796 F. 2d 217 (7th Cir. 1986), the Seventh Circuit stated that in considering a Motion for Transfer, a trial judge is limited to the three factors specifically mentioned in § 1404 (a): the convenience of the parties; the convenience of the witnesses and the interest of justice. The three factors are best viewed as "placeholders" for a broader set of considerations, the contours of which turn upon the facts of each case. The language of § 1404 (a) does not indicate the relative weight to be accorded each factor. *Id.* at 220, fn 3.

**1.    The convenience of the parties and the witnesses favors New York as the proper forum for this litigation.**

As discussed above, the underlying litigation that gives rise to Plaintiff's suit was a civil action against Kaplan, which was filed and litigated in New York, based upon events that occurred in New York and in which the defendants conducted their defense of Kaplan in New York.

As such, one would expect the witnesses relevant to that litigation to be most accessible in the greater New York-area. That is, indeed, the case.

Defendants Becker and Grannum live in New York and both work in the New York metropolitan area. See Exhibit 4 ¶ 9, 26; Exhibit 7 ¶ 9, 14, Affidavit of David Becker. All other D&G attorneys who performed legal services on behalf of Kaplan live or work in the New York Metropolitan area. See Exhibit 4 ¶ 9, 25; Exhibit 7 ¶ 10, 27.

The adversary law-firm in the 212 case, Quinn Emanuel Urquhart Oliver & Hedges LLP ("Quinn") is located in New York. See Exhibit 4 ¶ 6; Exhibit 7 ¶ 8. The

arbitration panel which considered the allegations of the 212 matter and reached a decision that was adopted by the New York court is in New York area. See Exhibits 2 and 3.[2]

Based upon the allegations stated in the Complaint, the only person involved in this litigation for whom Chicago is a more convenient forum is the Plaintiff.

In addition to the likelihood that the convenience of the witnesses and parties favors New York, it should also be noted that the location of documents and records relevant to the litigation is a factor to be considered in ruling upon a Motion to Transfer. *International Insurance Company v. Denenberg, Tuffley & Jamieson*, 1992 U.S. Dist LEXIS 9438 (N.D. Ill.1992). In the present matter, all files relating to legal work performed by D&G on Kaplan's behalf were maintained and are still located in New York. See Exhibit 4 ¶ 24, Exhibit 7 ¶ 13.

### 2. The interest of justice favors New York as the proper forum for this litigation.

The "interest of justice" is a separate component to a § 1404 (a) transfer analysis and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Coffey*, supra, at 220. Related litigation should be transferred to a forum where consolidation is feasible. Other factors to be considered under the "interest of justice" rubric are (1) whether jurors in a particular district have a financial interest in a case; and (2) in which district could a jury best apply community standards. The interests of justice analysis relates to the efficient functioning of the courts, not to the merits of the underlying dispute. *Coffey* at 221 and fn4.

---

[2] At best, only Myron Kaplan, Plaintiff's co-defendant in the 212 Case can offer testimony relevant to Plaintiff's legal malpractice claims. He would actually be more inconvenienced by appearing in Chicago than in New York as he lives the New York metropolitan area.

The underlying lawsuit that gives rise to D&G's representation of Kaplan was a claim that Kaplan and her brother improperly diverted funds from a group of investors to Myron Kaplan.

A New York state court ordered Kaplan to pay both compensatory and punitive damages in excess of $20 million dollars as a result of her liability in that matter. See Exhibit 4. Clearly New York, not Illinois, has a substantial interest in any litigation that affects Plaintiff's ability to pay the judgment rendered against her.

The underlying dispute is a localized matter, local to New York. The legal work performed on Kaplan's behalf occurred in New York; the hearings regarding her alleged liability to the partnership occurred in New York; and the judgment against her was rendered in New York. See Exhibits 4 and 7.

A jury in this jurisdiction, and this Court should not be required to listen to testimony, consider and ultimately decide an action which asks the question: Did a New York attorney appropriately litigate the claims stated against the Plaintiff in a New York court, based upon allegations that she improperly conducted business transactions that affected non-Illinois residents?

The events giving rise to suit occurred elsewhere than in Illinois. The allegations giving rise to the underlying suit against Kaplan did not occur in Illinois, nor did any alleged action or omission undertaken in her defense by D&G. Illinois has little interest in the outcome of this matter.

Additionally, as noted in D&G's Motion to Dismiss, D&G filed a lawsuit against Kaplan in New York in April, 1996 seeking payment of $50,661.71 in accrued legal fees. See Exhibit 8, Amended Complaint in *Davidson & Grannum, LLP v. Barbara Kaplan*,

Supreme Court of the State of New York, County of New York, Part 10 Case Number 601276/06.   The New York State lawsuit between the parties remains pending and involves a significant overlap of the issues before this Court. *See* Exhibit 1 and Exhibit 8.

It has been stated that "permitting two cases involving the same issues to continue in separate districts leads to "the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *McCraw v. Mensch*, 2006 U.S. Dist. LEXIS 11683 (W.D. Wis. 2006).   While consolidation of the two matters before one Court may not be possible, there can be no dispute that litigating both matters in one locale will be far more economical for the parties in regards to time, energy and money.   As such, the presence of another lawsuit between the parties in New York State also dictates transfer to the Southern District of New York would be appropriate.

### 3.      Deference is not required to Plaintiff's Choice of Forum

While Plaintiff might argue that her choice of forum in this Court alone should cause the Court to deny D&G's Motion to Transfer, such an analysis would be incorrect. A Plaintiff's choice of forum in a Section 1404(a) analysis is "significantly less weighty" under Section 1404(a) than under *forum non conveniens*. *Club Assistance Program, Inc.*, 598 F. Supp. 734 (N.D. Ill. 1984), citing *Associated Mills, Inc. v. Rush Hampton Industries, Inc.*, 588 F. Supp. 1164 (N.D. Ill. 1984).

In the present matter, Plaintiff's choice of forum is heavily outweighed by considerations of the convenience of witnesses, the necessary application of New York law and New York's greater interest in this matter.

In *International Insurance Company v. Denenberg*, 1992 U.S. Dist. 9438 (N.D. Ill. 1992), the Plaintiff filed a legal malpractice against the defendants in this district.

The defendant moved for transfer to the Eastern District of Michigan alleging that the relevant documents were maintained in Michigan; that two witnesses necessary to the defense were only subject to compulsory process in Michigan; that the legal work in question occurred in Michigan and was performed by Michigan lawyers; that the malpractice action would likely be governed by Michigan law; and finally that there existed related litigation in Michigan. *Id.* at 1-12.

Based upon these facts, District Judge Harry D. Leinenweber ordered transfer to the United States Court for the Eastern District of Michigan, finding that allowing to actions to proceed separately would needlessly waste judicial resources, and that the interests of justice "overwhelmingly" favored transfer to the Eastern District of Michigan. *Id.* at 12-13.

A similar analysis should be applied to this matter. The legal services in question were performed in New York; the judgment against Kaplan is located in New York; the likely source of any alleged proof of Kaplan's legal malpractice allegations are located in New York, there is related litigation pending between the parties in New York; and the convenience of the majority of witnesses is better served in New York. Plaintiff's choice of forum does not outweigh all these factors, and this matter should be transferred to the United States Court for the Southern District of New York.

**IV.    CONCLUSION**

For the reasons stated above, transfer of this matter pursuant to 28 U.S.C. § 1404 (a) is appropriate.    Defendants Davidson & Grannum LLP, Sandra D. Grannum and David L. Becker move this Court to issue an ORDER transferring further proceedings in this matter to the United States Court for the Southern District of New York.

Respectfully submitted,

**DAVIDSON & GRANNUM, LLP;**
**SANDRA D. GRANNUM AND**
**DAVID L. BECKER**

By:___/s/ Geoffrey A. Belzer_____
One of their attorneys

Daniel E. Tranen
Geoffrey A. Belzer
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
Telephone:  (312) 704-0550
Facsimile:  (312) 704-1522
Daniel.Tranen@wilsonelser.com

11

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing pleading was filed electronically on this 16th day of July, 2008 and a copy of same was served upon:

***Attorney for Plaintiff***
Gregg M. Rzepczynski
Gregg M. Rzepczynski & Associates Ltd.
175 West Jackson Boulevard
Suite 1650
Chicago IL 60604

by: ☐ hand-delivery; ☐ facsimile; ☐ overnight mail, next day delivery; and/or ☑ depositing same in the US Mail at or before the hour of 5:00 p.m. this 16th day of July, 2008.


___ /s/ Geoffrey A. Belzer _____
Daniel E. Tranen
Geoffrey A. Belzer


503050.2

12